Pennsylvania Labor Relations Board, Appellant,
*v.* Cadman.

Argued January 9, 1952. Before DREW, C. J.,
STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

2

reargument refused April 16, 1952.

*George L. Reed,* Solicitor, with him *M. Louise Rutherford,* Deputy Attorney General and *Robert E. Woodside,* Attorney General, for appellant.

*Joseph W. deFuria,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 24, 1952:

The Pennsylvania Labor Relations Board appeals from an order reversing its decision that appellee, William N. Cadman, discriminated against five employes in regard to tenure of employment because of union activities.

The court below correctly stated that its sole function in reviewing an order of the Labor Board was to determine whether the Board's findings of fact and inferences drawn therefrom were supported by substantial and legally credible evidence: Act of June 1, 1937, P. L. 1168, No. 294, sec. 9, as amended, 43 PS sec. 211.9; *Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc.,* 345 Pa. 398, 29 A. 2d 90; *Pennsylvania Labor Relations Board v. Daum,* 365 Pa. 285, 74 A. 2d 649.

It is clear that the evidence here presented was sufficient for this purpose, provided it was proper for

the Board to infer appellee's anti-union sentiments from the statements of his equipment superintendent, Domenick Cappeli. The controlling question is whether Cappeli was an employer within the meaning of the Pennsylvania Labor Relations Act, supra.

Section 3 (c) of that Act, 43 PS sec. 211.3 (c), defines the term "employer" as including "any person acting, directly or indirectly, in the interest of an employer". An identical provision appears in the National Labor Relations Act, 29 U. S. C. sec. 152 (2). We have not previously been called upon to interpret this section, but the federal courts have considered it on several occasions.

In *Packard Motor Car Co. v. National Labor Relations Board,* 330 U. S. 485, 67 S. Ct. 789, the United States Supreme Court speaking through Mr. Justice JACKSON explained the congressional intent as follows (p. 489) : "But Congress was creating a new class of wrongful acts to be known as unfair labor practices, and it could not be certain that the courts would apply the tort rule of *respondeat superior* to those derelictions. Even if it did, the problem of proof as applied to this kind of wrongs might easily be complicated by questions as to the scope of the actor's authority and of variance between his apparent and his real authority. Hence, it was provided that in administering this act the employer, for its purposes, should be not merely the individual or corporation which was the employing entity, but also others, whether employee or not, who are 'acting in the interest of an employer.'" Other cases in which an employer has been held bound by the acts of a supervisory employe without regard for the limitations of the doctrine of *respondeat superior* include: *H. J. Heinz Company v. National Labor Relations Board,* 311 U. S. 514, 61 S. Ct. 320, 323 ; *National Labor Relations Board v. Moench*

*Tanning Co., Inc.,* 121 F. 2d 951; *New Idea, Inc. v. National Labor Relations Board,* 117 F. 2d 517, 524.

In the instant case, therefore, our inquiry is not whether Cappeli had actual authority from Cadman to make the statements which he did, but only whether he acted "directly or indirectly, in the interest of an employer." In this connection it is pertinent to note that Cappeli's position was supervisory in nature. Appellee described it thus: "We designated him as the equipment superintendent . . . he sees that all the repairs are done; prepares various work schedules and sees that they are done . . . He generally interviews the men that come in for jobs."

Perhaps the best indication of the nature of the relationship between Cappeli and the other workers comes from his own testimony: "The fellows complained so I switched them from one job to the other so that the drivers would not complain to me about my keeping them under the shovel all the time. I told the boys they had to work any place I put them and they had to work under the shovel."

There can be no doubt that a man endowed with such authority was speaking "in the interest of" his employer when he told the men that a union would not be tolerated. It is therefore unnecessary for us to probe the niceties of the law of Agency and decide whether Cappeli had actual authority from Cadman or whether he in fact transmitted his knowledge of union activities to Cadman. Within the meaning of the statute, Cappeli's words were the words of the employer.

His anti-union expressions, taken together with appellee's unconvincing attempt to establish that the work of these employes had been unsatisfactory and the extraordinary coincidence that their discharge came the day after they had associated themselves with the union, were ample evidence to support the Board's find-

ings. It is immaterial that the court below might have reached a different conclusion from an independent examination of the testimony.

At the suggestion of the Board, Section 3 (a) of its order will be amended to read as follows: "(a) Offer Michael Bisignaro, John Milano and Joseph Milano full reinstatement to their former positions with back pay from August 2, 1950 to the date of the offer of reinstatement, less any amount actually earned by them or any losses wilfully incurred by them during such period, and without prejudice to any rights previously enjoyed by them and without discrimination against them by reason of their activities and affiliation with the Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 312, affiliated with the American Federation of Labor, or any other labor organization". In all other respects the order of the Board will be affirmed and enforced by the court below.

Order of the court below reversed at appellee's cost.