(No. 40111.—

OVERLAND CONSTRUCTION COMPANY, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THOMAS W. WAGNER, Appellee.)

*Opinion filed May 18, 1967.—Rehearing denied September 27, 1967.*

526

Klohr, Braun, Lynch & Smith, of Chicago, (Mark A. Braun, of counsel,) for appellant.

Norman Peters, of Chicago, (Charles Wolff, of counsel,) for appellee.

Mr. Chief Justice Solfisburg delivered the opinion of the court:

The petitioner, Thomas W. Wagner, was injured when he fell into a hole while working for Overland Construction Company. Petitioner subsequently filed a claim for compensation under the Workmen's Compensation Act, and the Industrial Commission granted him a permanent total disability award with a 15% pension for life finding that he had sustained a total and permanent loss of use of each foot. The circuit court of Cook County affirmed the commission's award and the employer appeals.

The employer's principal contentions on appeal are that the testimony of Dr. Gerald Rabin, the only medical witness to testify at the hearing, was improperly admitted and that the commission's finding that petitioner's leg injuries were total and permanent is not supported by the evidence.

The injury complained of occurred on May 28, 1963,

when Wagner, aged 43, fell into a hole while on a construction job for the employer. He fell a distance of 36 to 40 feet, landing with both feet on solid concrete. He was taken to Henrotin Hospital where he was diagnosed as having, among other injuries, multiple fractures of the left ankle, right os calcis (heel bone) and right wrist. Dr. Schafer, petitioner's attending physician while in Henrotin Hospital, applied casts to both legs and the right arm. He also attempted a fusion of the left foot by inserting a pin into the ankle. After eleven weeks in Henrotin the petitioner was transferred to St. Margaret's Hospital in Hammond, Indiana, which was closer to his home. At St. Margaret's Wagner was placed under the treatment of Dr. Fetrow. He remained there for two and one-half months, until his release on November 8, 1963.

On December 17, 1963, petitioner again entered St. Margaret's Hospital for four days during which time Dr. Fetrow removed the pin from his left foot. On May 28, 1964, petitioner was once more admitted to St. Margaret's to permit Dr. Fetrow to attempt a bone transplant and graft to his left foot and ankle. He was in the hospital at this time for approximately sixteen days, after which he returned home where he was confined to a wheel chair and a four-leg walker for about three and one-half months. The last time petitioner saw a doctor for treatment was in December, 1964, but subsequent to that time he was examined by Dr. Woodhouse and Dr. Rabin. The association with Dr. Rabin was limited to one examination in March, 1965. He was also examined several times at the employer's request by Dr. Scuderi who prescribed a clinical shoe for the petitioner's left foot. At the hearing in May, 1965, the petitioner testified that he had not been able to return to work since the date of the accident in 1963.

The employer's initial contention is that Dr. Rabin should not have been permitted to testify at the hearing since his medical report had not been furnished to the em-

ployer in accordance with section 12 of the Workmen's Compensation Act. This section provides in part as follows: "In all cases where the examination is made by a surgeon engaged by the injured employee, and the employer has no surgeon present at such examination, it shall be the duty of the surgeon making the examination at the instance of the employee, to deliver to the employer, or his representative, a statement in writing of the condition and extent of the injury to the same extent that said surgeon reports to the employee and the same shall be an *exact copy* of that furnished to the employee, said copy to be furnished to the employer, or his representatives, as soon as practicable but not later than 48 hours before the case is set for hearing. * * * If such surgeon refuses to furnish the employer with such statement to the same extent as that furnished to the employee, said surgeon shall not be permitted to testify at the hearing next following said examination." Ill. Rev. Stat. 1965, chap. 48, par. 138.12. (Emphasis added.)

Dr. Rabin, as has been pointed out, examined the petitioner on one occasion, in March of 1965. Prior to the hearing before the arbitrator the employer had been furnished with four pages of the doctor's medical report. The record shows that the fourth page did not contain a signature and consequently at the hearing employer's counsel moved to prohibit the doctor from testifying on the ground that the employer had not been provided with an exact copy of the report in accordance with section 12 of the Workmen's Compensation Act. Counsel for the petitioner, upon questioning, reluctantly admitted that he had received a five-page report from Dr. Rabin, but argued that the fifth page contained matter of a "mere medical-legal nature", such as the "percentages of disability from the compensation point of view" and thus did not come within the purview of section 12. The arbitrator, without having seen the fifth page, overruled the employer's motion solely on the word of

counsel for the petitioner that the page contained only percentages and allowed Dr. Rabin to testify. The entire five-page report was finally subpoenaed before the commission on review.

We agree with the employer that all five pages of the doctor's report should have been furnished to it prior to the hearing. Section 12 of the Workmen's Compensation Act is clear in holding that it is the duty of the examining physician to furnish the employer with an "exact copy" of the report furnished to the employee. We have difficulty in understanding the contention of petitioner's attorney that, notwithstanding the language contained in the statute, he is free to determine what part of the report should be furnished and what part should be deleted. At one point in the proceedings, upon being asked by counsel for the employer whether a fifth page existed, petitioner's attorney stated that that was his "own business." Such a reply indicates either a lack of familiarity with the provisions of the Workmen's Compensation Act or an unwillingness to abide by those provisions. In his brief, counsel for the petitioner attempts to support his action by relying on *Pocahontas Mining Co. v. Industrial Com.*, 301 Ill. 462, which states that a doctor is prohibited from testifying to percentages before the commission. To argue, however, that because a doctor is prevented from testifying as to certain matter in a report, that matter may be deleted by the employee or his attorney prior to submission to the employer, is absurd. Petitioner's tampering with the report was in direct violation of section 12 and the arbitrator was equally remiss in holding that the fifth page need not be produced. Petitioner's interpretation of section 12 would allow opposing counsel to delete material from a medical report prior to the time it is served on the other party at his own discretion.

The full medical report, however, was before the Industrial Commission on review and appears in the record

before us. While we strongly condemn the proceeding before the arbitrator, we have examined the entire report and we can find no prejudice to the employer in the failure of the employee to submit the fifth page prior to the hearing. We are unwilling to set aside the award because of this action of counsel and the error of the arbitrator. We are therefore of the opinion that the Industrial Commission did not err in failing to strike the testimony of Dr. Rabin.

We now turn to the employer's contention that the award to the petitioner was not supported by the evidence. Dr. Rabin testified that at the time of his examination, approximately 22 months after the accident, the petitioner was unable to squat, stand on his heels or on his toes. He also stated that the X rays taken of the petitioner some 11 months after he was discharged from the hospital showed that the left heel and ankle had an ununited fusion. He stated that this condition was permanent, but went on to recommend further surgery in an attempt to heal the nonunion although he did not know whether "it would take." The medical records show, however, that both a previous operation, similar in nature to the type that Dr. Rabin suggested, and a bone graft performed by Dr. Fetrow, were unsuccessful. As to the right foot, the medical testimony revealed that although the fracture to the foot had healed it was an irregular healing and there was some widening of the os calcis and some destruction of the subastagalar joint. The clinical examination revealed that motion of the right foot is limited because of this condition.

Petitioner's testimony established that he has not returned to work since the accident and that he is unable to perform any work around his house. He is able to be on his feet only one-half hour at a time and when sitting, can only arise by pushing himself up with his left hand and right elbow. He testified that putting any weight on his right foot causes pain and that he generally uses a cane whereever he goes. In reply to a hypothetical question, Dr. Rabin

stated that the petitioner is unable to perform the work of a structural iron worker or any other industrial activity requiring the normal use and function of his arms, legs and back.

In *Heaps* v. *Industrial Com.*, 303 Ill. 443, 447, we stated: " 'Permanent loss', as used in the Workmen's Compensation Act, concerning the loss of an eye, limb, *etc.*, means the taking away of the normal use of the member. The loss of a member is complete when the normal use of the member is taken away." We also held in *Armour Grain Co.* v. *Industrial Com.*, 323 Ill. 80, that a long period of time without substantial improvement is sufficient time to justify a finding that an injury is permanent. Here the employer produced no medical testimony to buttress its contention that the injury was not permanent. Instead it relies on Dr. Rabin's statement that an operation might give the petitioner a pain-free right foot. In view of the facts, however, that similar efforts had failed in the past, and that petitioner's condition has not significantly improved over a two-year period, we cannot state that the Industrial Commission's finding that the injuries to both feet were total and permanent is contrary to the evidence.

It is the function of the Industrial Commission to determine the facts and to draw reasonable inferences and conclusions from competent evidence in the record. The function of this court is limited to a determination of whether the findings of the commission are against the manifest weight of the evidence. (*Chicago Park District* v. *Industrial Com.*, 36 Ill.2d 212.) In the exercise of that function we cannot say that the determination of the commission that the employee's injuries resulted in a total and permanent loss is contrary to the manifest weight of the evidence. There was, therefore, no necessity for an award under section 19 of the Workmen's Compensation Act (Ill. Rev. Stat. 1965, chap. 48, par. 138.19), which provides for temporary awards in instances where the injury has not

532

yet reached a permanent condition. The decision of the circuit court of Cook County affirming the award of the Industrial Commission is affirmed.

*Judgment affirmed.*