507 A.2d 40

**Michael CUNNINGHAM, Appellee,**

v.

**COMMONWEALTH of Pennsylvania, PENNSYLVANIA STATE POLICE, Appellants.**

Supreme Court of Pennsylvania.

Argued May 15, 1985.

Decided March 25, 1986.

Joseph S. Rengert, Harrisburg, for appellant.

Anthony C. Busillo, II, Harrisburg, for appellee.

Andrew S. Gordon, Susan J. Forney, Allen C. Warshaw, Harrisburg, for amicus curiae.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

In this case we revisit an issue recently addressed in *Palmeri v. Commonwealth of Pennsylvania, Pennsylvania State Police*, 508 Pa. 544, 499 A.2d 278 (1985), concerning the burden of proof required to terminate benefits under the Heart and Lung Act, Act of June 28, 1935, P.L. 477 *as amended*, 53 P.S. § 637 (hereinafter the "Act"). In *Palmeri* we determined the standard of proof to be that evidence which establishes to a "scientific probability" that the employee's disability is permanent. Today we re-examine that standard and its practical ramifications.

### I.

The appellee, Michael Cunningham, injured his lower back on November 10, 1980, in the performance of his duties as a Pennsylvania State Policeman. The injury was disabling and appellee began receiving benefits under the Heart and Lung Act.[1]

---

1. The relevant provision of the Act provides:
   That any member of the State Police Force ..., who is injured in the performance of his duties ... and by reason thereof is temporarily incapacitated from performing his duties,.shall be paid by the

Cunningham's treatment initially consisted of physical therapy. Later he underwent back surgery to relieve the severe pain and to rehabilitate his back. Neither form of treatment eliminated his pain. In seeking further medical help, the appellee consulted several doctors, each of whom agreed that he was partially disabled. The doctors disagreed, however, on the proper course of treatment that would improve his condition. Their recommendations ranged from treatment by conservative physical therapy to additional surgery.[2]

In March, 1982, Cunningham received a notice from the Pennsylvania State Police stating:

The period of time during which compensation has been paid to you for your work-related injury has exceeded that which is ordinarily indicative of a temporary disabili-

Commonwealth of Pennsylvania if a member of the State Police Force ..., his full rate of salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased. All medical and hospital bills, incurred in connection with any such injury, shall be paid by the Commonwealth of Pennsylvania.... During the time salary for temporary incapacity shall be paid by the Commonwealth of Pennsylvania ..., any workmen's compensation, received or collected by any such employe for such period, shall be turned over to the Commonwealth of Pennsylvania ... and paid into the treasury thereof, and if such payment shall not be so made by the employe the amount so due the Commonwealth of Pennsylvania, ... shall be deducted from any salary then or thereafter becoming due and owing.
The Heart and Lung Act, Act of June 28, 1935, P.L. 477 *as amended,* 53 P.S. § 637(a).

2. The record reveals that Cunningham consulted four different specialists about the benefits of having a second operation on his spine. Three of the specialists thought Cunningham may benefit from further surgery, one thought he would not. None of the specialists were able to give a favorable prognosis for his return to work. One of the physicians examined Cunningham a year after his injury and concluded that, "he has a thirty percent partial disability with regard to his low back, which certainly prevents him from doing his work as a State Policeman." Approximately eight months later, the same physician re-examined Cunningham and concluded that due to increased symptoms and a deteriorated neurological examination his condition had deteriorated to the extent that his partial disability had increased to forty and fifty percent. *See infra* section IV for a more complete discussion of Cunningham's medical history.

ty. Therefore, it must be determined whether or not your disability is permanent.

You may wish to appear to present testimony or medical records concerning your condition. If so you must contact this Bureau within ten (10) days of receipt of this letter. The time and place of the hearing will then be established.

If you choose not to appear for a hearing the temporary or permanent nature of your disability will be determined independently. The determination will be based upon records and reports now on file and the results of any pending medical examination ordered by the Department or State Workmen's Insurance Fund (SWIF).[3]

Cunningham replied to the notice by informing his employer that he would be present for a hearing. At the hearing held on June 29, 1982, Cunningham testified that he believed he could return to work at a desk job provided that the assignment was close to his home.[4]

On July 16, 1982, five hundred and ninety-five (595) days after Cunningham's disability began, a Hearing Panel comprised of the State Police Director of Personnel, a department commander, and the State Police medical officer determined that Cunningham's condition was no longer considered temporary, and that his compensation under the Heart and Lung Act should cease. The panel stated that the decision to discontinue benefits was "based primarily upon the length of time [the] disability [had] continued and the absence of [a] favorable prognosis for [his] return to work."[5] Cunningham appealed the decision and the Commonwealth Court reversed, holding that there was insufficient support in the record for the Hearing Panel's decision.

3. This was the same notice sent to Trooper Palmeri in *Palmeri v. Pennsylvania State Police, supra.*

4. There is indication in the record that Cunningham had been offered a desk job in Huntingdon, Pennsylvania which was approximately 60 miles from his home in Ebensburg. Cunningham testified that because of his condition he would be unable to drive that distance to work.

5. The reasons given to Cunningham for termination of his benefits were identical to those given in *Palmeri, supra* n. 3.

The Commonwealth Court's holding was derived from the following standard of proof:

[I]t was critical for the State Police to establish on the record a factual basis for concluding that the duration of Palmeri's incapacitation raised a reasonable inference of permanence. In order to conclude that his condition was permanent there needed to be evidence linking Palmeri's circumstances—*i.e.*, the nature of his condition, his treatment history, his general health, his current medical status, and other relevant factors—to a scientific probability that his condition would not improve sufficiently to make him capable of returning to active duty.

*Palmeri v. Commonwealth of Pennsylvania,* 82 Pa. Commw. 348, 474 A.2d 1223 (1984).

Appellants appealed from the decision of the Commonwealth Court [6] arguing that the above standard is erroneous both as to the nature and degree of proof required to terminate benefits under the Act. Appellants maintain that the employer should not have to prove that the disability is permanent, but instead that the disability is not temporary. Appellants also contend that the Commonwealth Court erred in adopting the "scientific probability" standard instead of the less-burdensome "reasonable inference" standard. Because of the confusion in this area, we will now re-examine this issue and clarify our earlier holding in *Palmeri, supra.*

## II.

As noted in the Commonwealth Court's opinion in *Palmeri, supra,* "[t]he principal difficulty of this case is the absence of articulated standards for determining when a disability, once having been classified as temporary under the Act, may be deemed permanent." When a court is charged with reviewing a standard of proof used in an administrative procedure, the court must uphold a standard

6. Jurisdiction is vested in this Court pursuant to Section 724(a) of the Act of July 9, 1976, P.L. 586, No. 142, § 2, *as amended,* 42 Pa.C.S. § 724(a).

that is reasonable in light of the purpose and history of the act. *See Pennsylvania Human Relations Commission v. Uniontown Area School District,* 455 Pa. 52, 313 A.2d 156 (1973) (an interpretive rule, as opposed to a legislative rule depends for its validity on the willingness of a reviewing court to say that it in fact tracks the meaning of the statute it interprets); *cf. Commonwealth v. Harmar Coal Co.,* 452 Pa. 77, 306 A.2d 308, *appeal dismissed* 415 U.S. 903, 94 S.Ct. 1395, 39 L.Ed.2d 460 (1974) (courts are not bound by rulings contrary to the governing statutes). It is therefore necessary to review the purpose and history of the Act in the instant case.

■ The Heart and Lung Act covers specified public employees engaged primarily in police work, firefighting, or other jobs involving public safety.[7] The Act was created to ensure that, if these employees were injured or otherwise disabled in the course of carrying out their hazardous duties, they would be guaranteed continued full income until their return to duty. *Kurtz v. Erie,* 389 Pa. 557, 568, 133 A.2d 172, 177 (1957). As this Court suggested in *Kurtz, supra,* the Act was not intended to displace other forms of disability compensation such as Workmen's Compensation[8] benefits and payments under the Occupational Disease Act[9], which cover more prolonged or permanent disabilities. *Id.,* 389 Pa. at 563, 567, 133 A.2d at 175, 177.

7. The Act applies to state police, enforcement officers, investigators, parole agents, correction officers, psychiatric security aides, drug enforcement agents, policemen, firemen and park guards. 53. P.S. § 637.

8. Pennsylvania's Workmen's Compensation Act, Act of 1956, *as amended,* 77 P.S. § 1 *et seq.* Where the individual suffers partial disability, benefits are available pursuant to section 512. 77 P.S. § 512. Compensation for total disability arising from a work-related injury is provided under section 511. 77 P.S. § 511.

9. The Pennsylvania Occupational Disease Act, Act of June 21, 1939, P.L. 566, *as amended,* 77 P.S. § 1201 *et seq.,* was intended to be a vehicle for compensations where the disease, though not enumerated elsewhere in the Workmen's Compensation Act, *supra* n. 7, is nonetheless generated by an occupational hazard. 77 P.S. § 1208(n). *See Dunn v. Merck & Company,* 463 Pa. 441, 345 A.2d 601 (1975). We do not here contend that the Occupational Disease Act is applicable to appellee Cunningham.

Given the purpose of the Act, we have concluded that it was intended to cover only those disabilities where the injured employees were expected to recover and return to their positions in the foreseeable future. *See Kurtz, supra; Iben v. Monaca Borough,* 158 Pa.Super. 46, 43 A.2d 425 (1945). Where a disability is of indeterminate duration and recovery is not projected in the foreseeable future, it cannot be deemed "temporary" within the meaning of the Act. The Commonwealth has no obligation to provide compensation or to pay medical bills for permanent incapacity. *See Creighan v. City of Pittsburgh,* 389 Pa. 569, 132 A.2d 867 (1957); 1974 Op.Atty.Gen. No. 40.

## III.

■ We now address the Commonwealth Court's holding that the reasonable inference of permanency must be proven with a "scientific probability." While we agree that in such instances the burden of proof is upon the employer to prove that the disability is permanent,[10] for the following reasons we disagree that the permanency must be proven with a "scientific probability." The term "scientific probability" connotes an evidentiary degree akin to absolute certainty. In *Pearlman v. Metropolitan Life Insurance Co.,* 336 Pa. 444, 9 A.2d 432 (1939), this Court recognized the onerous burden that would be imposed upon a party by requiring proof of the permanency of a disability to a degree of absolute certainty. That case involved a private insurance policy which covered total and permanent disability. In concluding that the policyholder need only prove that he suffered from a disability that was "reasonably likely" to endure for the remainder of his life, the opinion noted:

> Physicians, whatever their professional learning and skill, cannot always make reliable prognostications, for in our age science is constantly devising methods of overcoming

10. Appellant argues that the employer should be required to prove instead that the disability is "not temporary". Under the standard articulated herein, however, we find the distinction between proving "not temporary" and proving "permanent" to be purely one of semantics.

diseases formerly considered incurable. *Therefore, if the insured had to establish the fact of permanency of disability to a degree of absolute certainty, no benefits would be recoverable until his death had furnished the only indubitable proof.*

*Id.*, 336 Pa. at 450, 9 A.2d at 435 (emphasis added).

The same considerations counsel against adoption of the Commonwealth Court's standard for an employer seeking to terminate Heart and Lung benefits. To obligate an employer to prove to a "scientific probability" that the injury or disability is permanent is in many instances to demand a higher degree of certainty than physicians are able to attain given the constant advances in medical research and treatment. We thus must reject the notion that the employee's permanent disability must be established by evidence amounting to a "scientific probability."

Although our existing case law provides little guidance as to the degree of certainty necessary for proving a permanent disability, we are aided in this task by decisions of various courts addressing similar issues. In *Pearlman v. Metropolitan Life Insurance Co., supra,* we determined that a permanent disability in a life insurance policy is that which is "reasonably likely" to endure for the remainder of one's life. *Id.*, 336 Pa. at 451, 9 A.2d at 435.

Federal courts have adopted a reasonable inference standard for proving permanency in the context of claims under the Longshoreman's and Harbor Worker's Compensation Act, March 4, 1927, 44 Stat. 1424, *as amended,* 33 U.S.C.A. § 901 *et seq.* In *Air America, Inc. v. Director, Office of Workers' Compensation Programs,* 597 F.2d 773 (1st Cir. 1979), the First Circuit held that a disability was permanent where it continued for a lengthy period and appeared to be of lasting or indefinite duration. In addressing the standard for establishing permanency, the court wrote:

To be considered permanent, a disability need not be "eternal or everlasting;" it is sufficient that the "condition has continued for a lengthy period, and it appears to be of lasting or indefinite duration, as distinguished from

one in which recovery merely awaits a normal healing period."

*Id.* at 781.[11]

Similar standards of proof under various Workmen's Compensation statutes have been established. In *Travelers Insurance Company v. Rudy,* 340 F.2d 132 (5th Cir.1964), the Fifth Circuit Court of Appeals held that a permanent injury can be inferred from circumstantial evidence. *See also Travelers Insurance Company v. Wade,* 373 S.W.2d 881 (Tex.Civ.App.1963) (jury may reasonably infer total and permanent disability from circumstantial evidence).

■ We are thus persuaded that the correct standard of proof is one which requires the employer to prove by substantial evidence a "reasonable inference" that the disability is of lasting or indefinite duration. The federal district court addressed the reasonable inference standard in *Mele v. All-Star Insurance,* 453 F.Supp. 1338, 1341 (E.D.Pa.1978) and held:

A reasonable inference is not one based upon speculation or conjecture but rather is a logical consequence deducted from other proven facts. (citations omitted). Although this inference must be reasoned from evidence presented, it need not be the only logical conclusion which a jury could reach.

**11.** This conclusion is consistent with decisions in other jurisdictions in which the question of what constitutes a permanent versus a temporary disability has been presented. *See Watson v. Gulf Stevedore Corp.,* 400 F.2d 649 (5th Cir.1968), *cert. denied* 394 U.S. 976, 89 S.Ct. 1471, 22 L.Ed.2d 755 (1969) (permanent means that the disability is lasting or continuous as distinguished from temporary); *Rose v. Thornton and Florence Electric Company,* 4 Kan.App.2d 669, 609 P.2d 1180 (1980) (permanency of disability is determined by continuation for an indefinite or indeterminate period of time); *Overland Construction v. Industrial Commission,* 37 Ill.2d 525, 229 N.E.2d 500 (1967) (disability for substantial period without substantial improvement is deemed permanent); *Logsdon v. Industrial Commission,* 143 Ohio St. 508, 57 N.E.2d 75 (1944) (permanency of injury established by continuation of injury for indefinite period of time without any present indication of termination); *Meznarich v. Republic Coal Co.,* 101 Mont. 78, 53 P.2d 82 (1935); *Sykes v. Republic Coal Company,* 94 Mont. 239, 22 P.2d 157 (1933) (disability is permanent in character if it is for an indefinite period).

Similarly, in *Commonwealth v. Whitman,* 199 Pa.Super. 631, 634–635, 186 A.2d 632, 633–634 (1963), the Superior Court wrote:

> Inference is a process of reasoning by which a fact or proposition sought to be established ... is deducted as a logical consequence from other facts, or a state of facts, already proved or admitted. *Simon v. Fine,* 167 Pa.Super. 386, 391, 74 A.2d 674 (1950). It has also been defined as "a deduction of an ultimate fact from other proved facts, which proved facts, by virture of the common experience of man, will support but not compel such deductions." *In re Dilios' Will,* 156 Me. 508, 167 A.2d 571, 578 (1960). The right inference or conclusion in point of fact, is itself a matter of fact, and to be ascertained by the jury or fact finder. *Simon v. Fine, supra,* 167 Pa.Super. p. 391, 74 A.2d at p. 676; *Neely v. Provident Life and Accident Insurance Co.,* 322 Pa. 417, 423, 185 A. 784 (1936). The inference to be drawn from the established facts is thus for the fact finder and not for us. The question we face is not whether we would draw the same inference as the trial judge, but whether under the evidence he could make such deduction as a logical consequence of other facts or whether his conclusion is a mere guess, surmise, suspicion, or conjecture.

We will now examine the facts of the instant case to determine whether the Hearing Panel reasonably deduced that appellee suffered from a permanent disability.

## IV.

■ Our scope of review in this appeal of a Commonwealth agency decision is limited to a determination of whether the findings and conclusions of the Hearing Panel are supported by substantial evidence.[12] *See Barasch v. Pennsylvania Public Utility Commission, Philadelphia*

---

12. Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. *Republic Steel Corp. v. Workmen's Compensation Appeal Board,* 492 Pa. 1, 421 A.2d 1060 (1980); *Norfolk & W. Railway Co. v. Pennsylvania Public Utility Commission,* 489 Pa. 109, 413 A.2d 1037 (1980).

*Electric Co.,* 507 Pa. 561, 493 A.2d 653 (1985); *Pennsylvania Labor Relations Board v. Cadman,* 370 Pa. 1, 87 A.2d 643 (1952); *Pennsylvania Labor Relations Board v. Daum,* 365 Pa. 285, 74 A.2d 649 (1950); 2 Pa.C.S. § 704. The Hearing Panel reached its conclusion that appellee was permanently, rather than temporarily incapacitated based upon the duration of appellee's continued disability and the lack of any favorable prognosis that appellee would be able to return to work. We believe the evidence of partial permanent disability presented on the record substantiated the Hearing Panel's conclusion.

In the instant case appellee's disability had persisted for five hundred and ninety-five (595) days prior to the agency's decision. While the duration of the disability does not in and of itself establish permanency, when coupled with the lack of a favorable prognosis and evidence of partial permanent disability, it is enough to create a reasonable inference of permanent disability.

The record establishes that appellee received the following treatment for his back injury sustained on November 10, 1980. During December of 1980, appellee received physical therapy for his condition but his pain would increase when he attempted increased activity (R. 4a). In January, 1981, appellee underwent surgery performed by a Dr. Osgood, however, as of April, 1981, the pain had not been eliminated. On September 2, 1981, appellee was examined by a Dr. Otenasek, a neurological surgery specialist. At that time, Dr. Otenasek diagnosed appellee as having a thirty percent permanent partial disability to his lower back which would prevent him from doing his work as a state policeman (R. 12a).

Approximately eight months later, Dr. Otenasek re-examined appellee. The examination revealed continued pain in Cunningham's back and legs and little change in a recent myelogram and CAT scan, which again showed an inflammation of appellee's arachnoid with swollen nerve roots. The examination also showed a grade one-to-two lumbar muscle spasm and stiffness in Cunningham's back. Based

upon the increased neurological damage to appellee's lower back, Dr. Otenasek estimated that appellee's permanent partial disability had increased to forty to fifty percent (R. 11a).

Moreover, three other specialists examined appellee prior to the administrative hearing, none of whom could give a favorable prognosis for appellee's return to work. (R. 12a, 19a, 20a). A Dr. Hanley stated that there was a possibility that appellee could benefit from further surgery. (R. 21a). This opinion, however, was contradicted by Dr. Otenasek. (R. 22a).

We believe the uncontradicted evidence of a forty to fifty percent *permanent* partial disability established that appellee was permanently incapacitated within the meaning of the Heart and Lung Act. It must be remembered that the Act was intended to fully compensate only those individuals injured during the course of duty who would someday resume their occupations. *Kurtz, supra* at 566, 133 A.2d at 176. The controlling statutory language is "temporarily incapacitated from performing his duties." 53 P.S. § 637(a). The Act was never intended to replace those forms of compensation available, *see supra* notes 7 and 8 and accompanying text, when it is demonstrated that the individual will never be able to substantially perform all the required duties of his or her job.[13] An individual, such as appellee, who suffers a forty percent permanent partial disability to his lower back cannot, as Dr. Otenasek concluded, perform the duties of a state policeman.

In determining whether the evidence creates a reasonable inference of permanent disability it is important to assess

13. Hence there is not a situation involving total deprivation of benefits. An individual disqualified from Heart and Lung benefits is still eligible for benefits under the Pennsylvania Workmen's Compensation Act, Act of 1956, *as amended,* 77 P.S. § 1 *et seq.* The disqualified individual may also use approved paid or unpaid sick leave, retire or return to work with certification from a doctor that he is capable of resuming duty. Once removed from benefits, the individual will receive approximately 166⅔% of his salary until his sick leave is exhausted as a result of concurrent payments for sick leave by the employer and disability benefits from Workmen's Compensation.

not only the duration of the incapacitation and the medical prognosis, but also whether the disability is of a nature which prevents the individual from performing the type of services normally required in his or her occupation. The employees covered by the Act generally encounter hazardous situations in their roles as protectors of the public. *See Kurtz, supra* n. 6 and accompanying text. The Act contemplates that the injured employee will recover to the extent that he or she can be of functional value in his or her oftentimes hazardous occupation. It is thus in the interest of public safety to hold under this Act that an injured employee who will never be able to substantially perform the job be deemed permanently disabled.[14]

Accordingly, we reverse and vacate the order of the Commonwealth Court, and reinstate the order of the Hearing Panel directing that appellee's compensation under the Heart and Lung Act should cease.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the Order of the Commonwealth Court is reversed and vacated. The Order of the Hearing Panel is reinstated directing that appellee's compensation under the Heart and Lung Act should cease.

HUTCHINSON, J., joins the majority opinion and files a concurring opinion.

LARSEN, J., files a dissenting opinion in which PAPADAKOS, J., joins.

HUTCHINSON, Justice, concurring.

I join the majority opinion. It correctly holds that the evidence was sufficient to show that appellee's injury was permanent and that he was no longer eligible for Heart and

---

14. In this vein we note that it is not enough to demonstrate that appellee may be capable of exercising some of the non-physical responsibilities of the position. To the contrary, appellee must demonstrate that he or she can adequately assume those responsibilities expected of a state policeman.

Lung Act benefits. I would go farther, however, and overrule our decision in *Palmeri v. Commonwealth, Pennsylvania State Police,* 508 Pa. 544, 499 A.2d 278 (1985). Today we hold that the employer must show "a 'reasonable inference' that the disability is of lasting or indefinite duration." *Supra* at 45. This is a restatement of the reasoning set forth in my dissent to *Palmeri, supra.* In that dissent, I stated that the length of the disability coupled with medical testimony about the nature of the disability can be sufficient to raise a "reasonable inference" of permanency. 508 Pa. at 553, 499 A.2d at 282 (Hutchinson, J., dissenting). Thus, I would overrule *Palmeri* and avoid the problems referred to by Mr. Justice Larsen in his instant dissent.

LARSEN, Justice, dissenting.

The issue raised in this case is similar to that raised in *Palmeri v. Pennsylvania State Police,* 508 Pa. 544, 499 A.2d 278 (1985). We held in *Palmeri,* that the employer is required to prove by competent evidence that an employee's disability will permanently prevent him from resuming the duties of his employment before Heart and Lung Act[1] benefits can be terminated. The standard of proof required to show a permanent disability is evidence which raises a reasonable inference of permanency. And a reasonable inference of permanency may be established by evidence connecting the disability to a scientific probability that the incapacity will not improve to a point where the disabled employee can resume his employment duties. There is no cause to re-examine, restate, or disturb in any way this recently adopted standard.

The majority[2] agrees that the employer has the burden of proving that a disability is permanent before Heart and Lung Act benefits may be terminated. The majority, how-

1. 53 P.S. § 637.

2. The majority opinion in this case is authored by Chief Justice Nix who joined in the majority in *Palmeri v. Pennsylvania State Police, supra.*

ever, expresses disagreement with the concept that a reasonable inference of permanency is established by evidence connecting the disability to a scientific probability that the incapacity will not improve to a point where the disabled employee can resume his employment duties. The majority equates "scientific probability" to "absolute certainty" and then opines that requiring proof that a disability is permanent to the degree of "absolute certainty" is much too onerous of a burden for an employer to meet. The "absolute certainty" criterion is created by the majority and set up as a strawman to be rejected as unrealistic.

After disapproving the standard we announced in *Palmeri,* the majority goes on to say "that the correct standard of proof is one which requires the employer to prove by substantial evidence a 'reasonable inference' that the disability is of lasting or indefinite duration." The concept of "indefinite duration" is too nebulous of a notion to embrace as the standard for proving a permanent disability. A disability of indefinite duration is one which has no limits. It is a disability that will not end. This then is another way of saying that the disability is permanent. That is to say, if a disability is expected to continue on without limitation, then that disability is permanent. The criterion purportedly adopted by the majority can be expressed thusly; the standard of proof to establish that a disability is permanent is proof by substantial evidence of a reasonable inference that the disability is a permanent one. This is hardly a satisfactory standard. There remains a question of the evidence required to raise an inference that the disability is of "lasting or indefinite duration." It is entirely unsatisfactory to say that a disability is permanent if it is of lasting and indefinite duration; and a disability is of lasting and indefinite duration if it is shown to be permanent. Proof that a disability is of indefinite duration may be met by the standard we adopted in *Palmeri,* namely, evidence connecting the disability to a scientific probability that the disabled employee has reached the maximum benefit from medical treatment, or he is as far restored as the permanent charac-

ter of his injuries will permit and he cannot resume the duties of employment. *Palmeri v. Pennsylvania State Police, supra.*

There is nothing mystical about the kind and quality of evidence we required in *Palmeri.* Expert medical opinion can be offered to establish permanency. The majority elects to forego necessary medical evidence and sanctions a finding of permanency based upon the length of time a disability has persisted coupled with the absence of a favorable prognosis. This is precisely the inadequate standard we rejected in *Palmeri.*

Additionally, in *Palmeri,* we said:

It is not necessary that an injured trooper recover so that he is able to perform every conceivable function that could possibly arise in connection with a policeman's duties generally. It is enough that his recovery enable him to perform the duties of a position that is regularly assigned to state policemen even though the job be entirely sedentary.

In this case, Cunningham testified that he believed he could return to work at a desk job providing that he did not have to travel a great distance to and from his place of employment. The majority suggests it is not enough that the evidence show that the injured employee has recovered to a point when he is capable of assuming the duties of certain sedentary positions regularly assigned to state troopers. The majority would require the evidence to demonstrate a recovery that permits the employee to assume every conceivable duty associated with employment as a State Trooper. This directly conflicts with our opinion in *Palmeri.* I find no reason to deviate from the principles we recently adopted in *Palmeri* and I believe they should be applied here.

Reviewing the testimony and evidence in this case under our holding in *Palmeri,* it is apparent that the record lacks substantial evidence from which it reasonably can be inferred that the appellee Cunningham has a permanent inca-

pacity that will prevent him from resuming a position with the Pennsylvania State Police.

I dissent.

PAPADAKOS, J., joins this dissenting opinion.

