## Brewster v. Board of Commissioners of Upper Dublin Township

*J. Peirce Anderson,* for plaintiff.
*Michael E. Smith,* for defendant.

SMYTH, *J.*, February 16, 1988—Defendant appeals from an order dated December 18, 1987, denying its post-trial motions and motion for judgment n.o.v. filed pursuant to Pa.R.C.P. 227.1.

The facts of record in the instant matter are as follows. Thomas J. Brewster had been employed by Upper Dublin Township as a police officer for approximately 23 years. On June 11, 1980, Brewster was called to investigate a house burglary in progress. After chasing a suspect on foot, Brewster became sick, dizzy, and experienced chest pains. He was immediately taken to Abington Memorial Hospital.

Brewster was diagnosed as having angina pectoris and was hospitalized for six days. He was discharged to the care of Dr. Martin Frank, a cardiac specialist whom Brewster had been seeing on a regular basis because of a previous coronary incident in 1977. Dr. Frank is familiar with police du-

ties and responsibilities as a result of numerous contacts throughout his practice with policemen and firemen concerning coronary problems.

Brewster was given a routine physical examination by Dr. Frank on June 10, 1980, the day before the above-mentioned incident. Upon his discharge from the hospital, Brewster was advised not to engage in strenuous activities such as running, heavy lifting, and similar activities.

On October 30, 1980, Brewster met at the Township Building with his attorney, the township manager, and the chief of police to discuss the possibility of his returning to work on a limited basis. Brewster was advised by the chief that he could not come back to work until he was ready to do full-time police work, and the township manager stated he would be allowed to return when he could pass a physical. Immediately following the meetings, Brewster's counsel sent a letter to the Upper Dublin Township Solicitor advising him of Brewster's claim under the Heart and Lung Act.

Following the June 11, 1980 incident, Brewster filed a claim under the Pennsylvania Workmen's Compensation Act.[1] The township's insurance carrier defended the Workmen's Compensation claim on the basis that the disability which was incurred on June 11, 1980 ceased on July 15, 1980. On October 7, 1982, the Workmen's Compensation referee filed his decision denying Brewster's benefits after July 15, 1980. Brewster appealed the decision and it was affirmed by the commissioners of the Board of Workmen's Compensation in February 1983. Brewster then appealed to the Commonwealth Court. The Commonwealth Court affirmed the decision in

---

1. Act of June 2, 1915, P.L. 736, Art. 1, §101 et seq., as amended, 77 P.S. §1 et seq.

October 1986, and the Pennsylvania Supreme Court denied Brewster's petition for allowance of appeal.

Before the Commonwealth Court's decision was handed down, Brewster filed the instant action against the township on August 24, 1983, seeking salary, sick leave entitlement, holiday pay, education bonus and vacation pay. This action was filed pursuant to the Heart and Lung Act,[2] which requires townships to pay a policeman injured in the performance of his duties the full rate of his salary until the temporary disability arising therefrom has ceased.

Brewster was authorized by Dr. Frank to resume work as of November 1, 1982. Township requested Brewster to take another physical, by a neutral doctor, before it would permit him to return to work. At township's request, Brewster submitted to a physical examination by Dr. Gilbert Zuckerman who authorized him to return to work. Brewster returned to work as an Upper Dublin police officer on regular patrol duties on January 1, 1983.

From June 11, 1980 until January 1, 1983, Brewster was not requested to turn in his badge, gun, uniforms, or any other equipment issued to him. Brewster was not asked to take a civil service examination upon his resumption of work on January 1, 1983. No efforts were made to terminate Brewster either because of an inability to perform his job, or because he was absent without leave. Brewster was not subject to any disciplinary proceedings by the township for any period of his absence, and no change in his seniority occurred during that absence for longevity pay, salary, vacation selection and other like benefits.

---

2. 53 P.S. §637, et seq.

During the period of Mr. Brewster's absence and after accumulated sick leave had been calculated, Mr. Brewster received no compensation, longevity pay, education bonus or holiday pay. He received none for the year 1981, 1982 and for some portions of 1980. During this period of time, Mr. Brewster was a member of the bargaining unit comprising the Upper Dublin police department and was subject to a collectively bargained agreement. During the period of Mr. Brewster's absence from work, hospitalization and retirement benefits continued for him pursuant to the contract of employment.

Township filed several motions in this matter including a motion for judgment on the pleadings, a motion for summary judgment, and a motion in limine. The above motions were denied. Brewster filed a motion in limine requesting that township be precluded from mentioning the Workmen's Compensation action or the findings of the referee. This motion was held in abeyance to be ruled on in the context of the trial.

A jury trial was held on February 9, 10, 11, and 12, 1987. At trial, Brewster, Dr. Martin N. Frank, and Marvin S. Feller testified on behalf of Brewster. Dr. Gilbert Zuckerman testified on behalf of township.

Dr. Frank, who was qualified as an expert in cardiology, testified that after the June 11, 1980 incident he next examined Brewster on July 15, 1980. Dr. Frank testified that on July 15, Brewster appeared in the same condition as he had been on June 10, by the physical examination and the cardiogram. However, Dr. Frank was more worried about Brewster than he had been prior to the June 11 incident, and did not consider him to be in the "same condition." That same day, Dr. Frank wrote a note indicating that Brewster was unable to return

to work and that his time of return to work was then unknown.

Dr. Frank testified that in 1982, a new drug, procardia, became available and was prescribed for Brewster. Dr. Frank observed that Brewster's condition improved as a result of the implementation of that medication. On October 27, 1982, Dr. Frank authorized Brewster's return to work by a letter to the Chief of Police citing "the very brilliant results he had from procardia."

Plaintiff also presented Marvin S. Feller, former township manager of Upper Dublin Township from January 1, 1973 until December 31, 1981. Prior to Mr. Feller's appointment as township manager, he had been a commissioner in Upper Dublin Township beginning on January 1, 1967. Mr. Feller testified that, as township manager, all township employees were under his supervision, including the police department, and therefore, he became aware of Mr. Brewster's coronary event of June 11, 1980. Mr. Feller testified that shortly after the event of June 11, 1980, a meeting occurred in his office attended by himself, Mr. Brewster, chief of police and Mr. Brewster's attorney concerning Mr. Brewster's return to work and, at the conclusion thereof, Mr. Brewster was advised that he could not return to work until he was fully recovered and so certified by a neutral physician.

During the period of Mr. Feller's service as commissioner and manager, police officers were not required to submit to physical examinations after their original employment, and were not required to meet any agility or performance standards. During the period that Mr. Feller was manager, no efforts were made to terminate Mr. Brewster, either because of an inability to perform his job, or because

he was absent without leave, nor were any requests made of Mr. Brewster to return any police equipment, paraphernalia, or uniforms. Additionally, no benefits were terminated during Mr. Brewster's absence and he continued to receive pension contributions, as well as hospitalization · insurance coverages.

Defendant called Dr. Gilbert Zuckerman, cardiologist, as their only witness. Dr. Zuckerman testified that he reviewed Abington Hospital records for June 1980, and thallium and stress tests results· of July 1980, as well as the deposition of Mr. Brewster and Dr. Frank. By reason of that evaluation, Dr. Zuckerman testified that Mr. Brewster had suffered an episode of coronary insufficiency precipitated by extreme exertion, and that in Dr. Zuckerman's opinion, the coronary insufficiency is a temporary set of circumstances occasioning no damage to Mr. Brewster's heart. As a result of the evaluation and documentation supplied Dr. Zuckerman by defense counsel, Dr. Zuckerman concluded that the disability that Mr. Brewster suffered on June 11, 1980 ceased on July 8, 1980.

At the conclusion of the trial the jury returned its verdict in favor of Brewster. The jury found that Brewster's temporary incapacity for purposes of the Heart and Lung Act terminated on October 27, 1982. On March 13, 1987, by agreement of the parties, the court molded the jury verdict to provide for money damages of $76,402.25 including interest to that date and 40 days of sick leave.

On February 20, 1987, township filed post-trial motions and motion for judgment n.o.v. A hearing on the above motions was held on September 21, 1987. Township's motions were denied as per order dated December 18, 1987. This appeal follows.

(This court will address only those exceptions dealt with in township's brief in support of post-trial motions.)

## DISCUSSION

One legal argument raised in support of defendant's post-trial motion is that the court erred in denying defendant's motion for summary judgment and pretrial motion in limine. In support of this argument defendant claims that the Workmen's Compensation referee's findings of fact regarding the length of Brewster's disability now collaterally estop Brewester from re-litigating this issue under the Heart and Lung Act.

The Pennsylvania Supreme Court has stated:

"(A) plea of collateral estoppel is valid if, (1) the issue decided in the prior adjudication was identical with the one presented in the later action, (2) there was a final judgment on the merits, (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication and, (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in the question in a prior action." *Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 574, 345 A.2d 664, 668 (1975).

The referee found that, under the Workmen's Compensation Act, Brewster was "totally disabled from June 11, 1980, up to and including July 14, 1980." and that "the . . . disability that resulted from the incident of June 11, 1980 ceased and terminated on July 15, 1980." However, because "disability" is defined differently under the acts, this court finds that the referee's determination of Brewster's duration of disability under the Workmen's Compensation Act is not conclusive as to when the temporary incapacity ceased under the Heart and Lung Act.

Under Pennsylvania's Workmen's Compensation Act, when an individual suffers total disability from a work-related injury, benefits are available under section 511, 77 P.S. §511. The term "disability" is not defined in the statute, however, according to case law, for purpose of Workmen's Compensation, the term "disability" is synonymous with "loss of earning power." *Wheeling-Pittsburgh Steel Corp. v. Workmen's Compensation Appeal Board,* 70 Pa. Commw. 100, 452 A.2d 611 (1982). The act compensates an individual for loss of earning power resulting from a work-related injury or medical condition. *Id.* The Commonwealth Court in *Wheeling-Pittsburgh Steel Corp.,* defined "earning power" as the "ability to earn income, and in our cases it refers generally to the capacity to perform an occupation or obtain remunerative employment." *Id.* at 103, 452 A.2d at 612. Accordingly, an additional consideration in workmen's compensation proceedings is whether there is available work suitable to the individual's age, education, and physical limits. *4156 Baer Corp. v. Workmen's Compensation Appeal Board,* 63 Pa. Commw. 176, 438 A.2d 657 (1981).

The definition of disability, however, is different under the Heart and Lung Act. Under this act, loss of earning power is not a consideration. The Heart and Lung Act covers specified public employees engaged primarily in police work, firefighting, or other jobs involving public safety. The Heart and Lung Act provides in part:

"§637. State Police, Enforcement Officers, . . . Policemen; Compensation and Expenses —

"(a) [A]ny . . . policeman . . . of any . . . township, who is injured in the performance of his duties . . . and by reason thereof is *temporarily incapacitated* from performing his duties, shall be paid . . . by the

township by which he is employed, his *full rate of salary* . . . until the *disability* arising therefrom has ceased. . . . During the time salary for temporary incapacity shall be paid by the . . . township, any workmen's compensation, received or collected by any such employee for such period shall be turned over to the . . . township, and paid into the treasury thereof, and if such payment shall not be so made by the employee, the amount so due the . . . township shall be deducted from any salary then or thereafter becoming due and owing." 53 P.S. §637

Under the Heart & Lung Act, the township is obliged to pay "the full rate of salary" of the police officer temporarily disabled on duty. If the injured police officer receives any worker's compensation, he must turn it over to the township or the township can deduct from any payment due said officer the amount of the compensation. There is a difference between compensation and full salary and the legislature apparently intended such a distinction.

The Heart and Lung Act covers only temporary incapacities where the injured is expected to recover and return to his/her position. *Cunningham v. Commonwealth of Pennsylvania, Pennsylvania State Police,* 510 Pa. 74, 507 A.2d 40 (1986). This act focuses on recovery which enables the individual to perform duties of a position that is regularly assigned to, as here, a policeman. Again, loss of earning power is not a consideration in determining partial disability under this act. The availability of other suitable work is not a consideration under the Heart and Lung Act as the act's focus is on the individual being able to return to work at his/her *specific* job. Due to these differences, as is evident by this case, an individual could be found to be "disabled" under the Heart and Lung Act and at the same time

be found not to be "disabled" under the Workmen's Compensation Act.

Because the issue of "duration of disability" as decided by the Workmen's Compensation referee is not identical to the issue of "disability" under the Heart and Lung Act, this court did not err in denying defendant's motion for summary judgment and pretrial motion in limine. Having found that the first element of collateral estoppel is not present, the court need not address the remaining elements. Accordingly, it is also not necessary for the court to address Brewster's contention that collateral estoppel does not apply to the decision of the Workmen's Compensation Board, an administrative agency.

Township argues that the court erred in granting Brewster's pretrial motion in limine precluding township from presenting any testimony or argument regarding the workmen's compensation action. A close review of the record reveals that this court did not grant Brewster's pretrial motion in limine.

After finding that collateral estoppel did not apply in this case and in light of the possible prejudicial nature of this evidence, the court stated:

"As far as Mr. Anderson's other motion in limine, regarding any reference to the workmen's compensation decision in front of the referee, I granted it — well, I granted it with a caveat. I said there is to be no reference to workmen's compensation — actually, I didn't grant it. I just said there is to be no reference to workman's compensation, until I'm approached first, and a proffer is made to the court, and I know in what context you are trying to introduce it. So, that's where the record stands with Mr. Anderson's motion."

Another legal argument raised in support of township's post-trial motion is that the court erred in al-

lowing this matter to be tried by a jury. On March 14, 1985, Brewster submitted a written request for a jury trial. The praecipe for civil trial list executed by both Brewster's counsel and township's counsel, filed on May 3, 1985, also demanded jury trial. The first time township objected to Brewster's request for jury trial was by a motion to strike demand for jury trial made immediately prior to jury selection. Said motion was denied.

In support of its motion to strike demand for jury trial and its post-trial motion, township asserts that Brewster is not entitled to a jury trial because of a deviation from Pa.R.C.P. 1007.1 requiring a written request therefore within 20 days of the filing of the last permissible pleading.[3]

Pa.R.C.P. 126 provides as follows:

"The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties."

In the case of *Selck-Minnerly Group Inc. v. Mathews Intern Corp.*, 13 D.&C. 3d 149 (1980), the court stated:

"[W]e should not deny the right to a jury trial to a party who has not knowingly waived this right in the absence of prejudice to an adverse party or inconvenience to the court." *Id* at 151. The court went on to state:

"Thus, the Pennsylvania Supreme Court did not exclude rule 1007.1 from the provisions of Pa.R.C.P. 126 which permits the court at any stage

3. The last permissible pleading was Brewster's reply to new matter filed on May 16, 1984.

of any action to disregard any error or defect of procedure which does not affect the substantial rights of the parties and Pa.R.C.P. 248 which permits the court to extend the time prescribed by any rule of civil procedure for the doing of any act." *Id.*

Township claims that because of the later filing of the jury demand, Brewster has expressly waived a jury trial. This court disagrees and finds there was no such express waiver. It is within this court's discretion to disregard this defect of procedure as the court finds there has been no prejudice to township by allowing a jury trial. Anything kept from the jury would not have been considered in rendering a decision in a non-jury trial. Therefore, this court did not err in refusing to strike the demand for jury trial or in allowing this matter to be tried by a jury.

In township's brief in support of post-trial motions, township contends that Brewster is not entitled to a jury trial under the Heart and Lung Act. Jury trials are not available in proceedings created by statute unless the statute so provides, or unless the proceeding has a basis in common law. *Appeal of Watson,* 377 Pa. 495, 105 A.2d 576, cert. denied, 348 U.S. 879 (1954), rehg. denied, 348 U.S. 922 (1955); *In re Friedman,* 72 Pa. Commw. 274, 457 A.2d 983 (1983).

Nowhere in the record, however, did township raise this issue. In neither its motion to strike demand for jury trial nor its post-trial motion did township ever claim that Brewster was not entitled to a jury trial under the Heart and Lung Act. In any event, the court notes that Brewster's suit sounds in assumpsit based upon a contract of employment. The Heart and Lung Act simply provides certain rights for particular employees but does not give rise to the instant suit.

Township also claims that the court erred in precluding it from presenting testimony or argument or cross-examining Brewster and Dr. Frank regarding the fact that Brewster was authorized to return to work within three weeks of the adverse Workmen's Compensation decision.

It is clear that relevant evidence may properly be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion. *Saset Mineral Corp. v. Industrial Fuels Corp.*, 326 Pa. Super. 14, 473 A.2d 584 (1984); *Whistler Sportswear Inc. v. Rullo,* 289 Pa. Super. 230, 433 A.2d 40 (1981). The Superior Court in ·*Saset Mineral Corp.* noted that the trial judge has broad discretion regarding the admission of potentially misleading and confusing evidence. 326 Pa. Super. at 22, 473 A.2d at 588.

Township claims it was error to deny it the opportunity to use this evidence to impeach Brewster's credibility regarding his alleged "sudden recovery." This court felt, however, that allowing the jury to learn of the unfavorable Workmen's Compensation decision was too prejudicial. It is within the court's broad discretion to preclude such prejudicial evidence.

The court did allow township to cross-examine Brewster on an affidavit on appeal that Brewster signed on October 25, 1982. Said affidavit was attached to an appeal from the Workmen's Compensation decision of October 7, 1982, however, no reference to the appeal itself was allowed. Township was also permitted to cross-examine Dr. Frank as to the contents of letters he sent to the Workmen's Compensation Board and the Insurance Company, Pennsylvania Manufacturers Association, so long as no mention was made of to whom the letters were sent.

Township also claims that this court erred in precluding it from entering into evidence portions of the medical records of Ambler Medical Associates.[4] Township claims these records fall under an exception to the hearsay rule in that they are business records and further were being offered to impeach the credibility of Brewster and Dr. Frank.

The private records of a physician are admissible to the same extent as hospital records. *Freedman v. Mutual Life Insurance Co.,* 342 Pa. 404, 21 A.2d 81 (1941). Hospital records are admissible to show hospitalization, treatment prescribed, and symptoms given. *Commonwealth v. DiGiacomo,* 463 Pa. 449, 345 A.2d 605 (1975); *Morris v. Moss,* 290 Pa. Super 587, 435 A.2d 184 (1981).

This specific statement excluded from Ambler's records was part of an entry dated October 21, 1982. The statement read, "He has decided he wants to return to work." This court limited the admissibility of the medical records to those parts pertaining to "hospitalization, treatment prescribed, and symptoms given." Since the statement deleted did not relate to hospitalization, treatment prescribed, or symptoms given, this court excluded it.

If, however, excluding this statement was error, it was harmless error. An erroneous ruling must also be harmful to the complaining party before reversal is required. *Anderson v. Hughes,* 417 Pa. 87, 208 A.2d 789 (1965). A review of Brewster's testimony will show that the statement excluded from the medical records was covered on cross-examination. The pertinent part of Brewster's cross-examination is as follows:

---

4. Brewster's only contact with Ambler, the primary doctor by reason of the HMO provisions of the township's hospitalization insurance, was for referrals to cardiologists.

Q: Do you remember telling Ambler Medical Associates, on or about that date, that you decided that you wanted to return to work?

A: I don't remember telling them that specific date. I may have. I may have told them on every occasion. I don't remember. I think it was pretty well common knowledge to Doctor Frank and Doctor Reed,[5] both, that I wanted to go back to work, from the day I was out until I did go back. I think it was pretty clear to both doctors.

Township claims that this court erred in sustaining Brewster's objection to township's request that Dr. Frank, while on cross-examination, read a portion of his prior deposition taken for the Workmen's Compensation hearing.[6] Township was trying to impeach Dr. Frank with what they claimed to be a prior inconsistent statement.

Initially, township failed to lay a proper foundation for using the prior statement, which this court then proceeded to do. It is within the court's discretion to require such a procedure. *Commonwealth v. Manning,* 495 Pa. 652, 435 A.2d 1207 (1981). After Dr. Frank reviewed the specific statements in the deposition and actually read them on the record neither the court nor Dr. Frank could find any inconsistencies.

Notes of testimony pages 255-9, read in conjunction with pages 178-82, indicate that everything township wanted to illicit from the deposition was actually read onto the record. Since the testimony was on the record, nothing prevented township from arguing to the jury that there was an inconsistency.

---

5. Doctor Reed worked at Ambler Medical Associates.

6. This "deposition" was not taken in this proceeding, nor was it in the court's file. Arguably this is not even a "deposition" as contemplated by Pa.R.C.P. 4001.

Township also claims that this court erred in precluding it from using Dr. Frank's prior deposition as substantive evidence in its case in chief pursuant to Pa.R.C.P. 4020. Rule 4020 provides in pertinent part as follows:

"(a) At the trial, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or had notice thereof if required, in accordance with any one of the following provisions:

"(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of a deponent as a witness . . .

"(5) A deposition upon oral examination of a medical witness, other than a party, may be used at trial for any purpose whether or not the witness is available to testify."

Township was trying to use Dr. Frank's prior deposition to establish that he said Brewster "was in the same condition on July 15, 1980 as on June 10, 1980." Township claims that this statement is somehow inconsistent with Dr. Frank's testimony at trial. Both this court and Dr. Frank could find no inconsistency between the deposition testimony and Dr. Frank's testimony at trial. In any event, the bottom line is that the deposition testimony was read into evidence by Dr. Frank. This court saw no need to allow the deposition as substantive evidence to merely reaffirm what the witness had already said on cross-examination.

If this court erred in refusing to allow the deposition testimony as substantive evidence, such error is certainly harmless since the actual testimony was read into evidence and township suffered no prejudice. Additionally, this court notes that the comments to rule 4020 indicated that rule 4020 (a)(5)

was designed to alleviate the rising costs of obtaining medical testimony and the inconvenience which may be caused to the medical witness. In the *instant matter*, Dr. Frank was not only available but was present and testified and could easily have been called in township's case in chief.

Next, township claims that this court erred in denying its additional points for charge 4 and 5. This court denied point 4 as argumentative and point 5 because it was to be covered in the court's charge. "[T]he refusal to give a proper instruction requested by a party is ground for a new trial unless the substance thereof has otherwise been covered by the court's general charge." *Butler v. DeLuca,* 329 Pa. Super. 383, 390, 478 A.2d 840, 844 (1984). It is clear, from a careful reading of the court's charge, that the substance of additional points 4 and 5 were more than adequately covered in the court's charge. Accordingly, this court did not err in its charge to the jury.

Lastly, township claims the court erred in denying its motion for directed verdict. "A directed verdict can properly be granted by a court only if the facts are clear and free from doubt." *Person v. C.R. Baxter Realty Co.,* 340 Pa. Super. 537, 540, 490 A.2d 910, 911 (1985). "[T]he trial court must consider the facts in the light most favorable to the party against whom the motion is made and must accept as true all evidence which supports that party's contention and must reject all adverse testimony." *Cooke v. Travelers Insurance Co.,* 350 Pa. Super 467, 471, 504 A.2d 935, 936 (1986).

Township claims that the evidence presented by Brewster indicated that on July 15, 1980, Brewster was in the same physical condition as he was on June 10, 1980. Accordingly, township claims that since Brewster's disability resulting from the inci-

dent on June 11 had ceased on July 15, 1980, Brewster is entitled to benefits under the Heart and Lung Act only for that duration. It is by this same reasoning that township claims the jury verdict is against the evidence and the weight of the evidence and moves for judgment n.o.v.

The facts in this case were not clear and free from doubt. There was, however, ample evidence to support the jury's finding that Brewster's temporary disability ceased on October 27, 1982.

Dr. Frank testified that diagnostically Brewster was in the same condition on July 15, 1980 as he was on June 10, 1980. However, Dr. Frank did not consider Brewster to be "in the same condition" and he was worried about Brewster because of the June 11, 1980 incident. Dr. Frank had one more thing in his file that he did not have on June 10, the incident of June 11. Because of this concern, Dr. Frank wrote a note on July 15, 1980 indicating that he did not want Brewster to return to work at that time. Dr. Frank authorized Brewster to return to work as of November 1, 1982. There was evidence that this authorization came as the result of Brewster's use of a new drug, procardia.

There was also evidence that township did not require Brewster to return to work or return his uniforms and equipment. Township also continued to pay Brewster's hospitalization insurance and pension participation. Since township never dismissed Brewster and continued to pay his benefits, it can be inferred that township thought that Brewster's disability was temporary, and that he had not recovered therefrom by July 15, 1980.

Township's motion for directed verdict was properly denied. The jury's verdict is supported by the evidence and, accordingly, township's motion for judgment n.o.v. was properly denied.

There being no error in this court's handling of this case, the jury's verdict, as molded by the court, should stand.