**James HOLLENBUSH, Petitioner,**

v.

**DEPARTMENT OF CORRECTIONS, STATE CORRECTIONS INSTITUTE AT FRACKVILLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 30, 1999.
Decided July 29, 1999.

Andrew C. Onwudinjo, Pottsville, for petitioner.

Timothy D. Mara, Camp Hill, for respondent.

Before DOYLE, J., PELLEGRINI, J., and McCLOSKEY, Senior Judge.

DOYLE, Judge.

James Hollenbush (Claimant) appeals from an order of the Secretary of the Department of Corrections (Secretary) terminating his benefits under the Heart and Lung Act (Act).[1]

Claimant began working for the Department of Corrections (DOC) on January 12, 1996, as a Correction Officer Trainee at the State Correctional Institution at Frackville. While performing his duties on May 30, 1996, Claimant tripped on an uneven pavement and injured his left knee. He was treated at Pottsville Hospital that same day and Dr. Myron Haas drained 60 cubic centimeters of fluid from his knee. On June 3, 1996, another physician examined his knee and informed Claimant that he could return to work at the correctional institution.

Upon returning to work the following day, Claimant resumed his usual duties. Although he limped from significant pain and swelling in his knee, Claimant continued to work until July 27, 1996. On that date, Dr. Haas reexamined the knee and determined that it required surgery to treat chondromalacia.[2] Dr. Haas subsequently performed two arthroscopic surgeries on the knee. Despite these treatments, Dr. Haas predicted that Claimant will need a third arthroscopic surgery and, eventually, a total knee replacement. Claimant never returned to his former duties after leaving the correctional institution on July 27, 1996. Dr. Haas stated his opinion that Claimant will never again be capable of working in a non-sedentary capacity, working with inmates, or resuming work as a security guard, and Claimant does not contest this prognosis. Rather, he emphasizes that his condition will not prevent him from taking a desk assignment with DOC.

Initially, DOC granted Heart and Lung benefits to Claimant.[3] However, when Claimant remained unable to resume his full time pre-injury duties after two surgeries, DOC moved to terminate payment of Heart and Lung benefits on the grounds that Claimant's injury was no longer temporary, but permanent. A hearing was held on August 28, 1997, during which DOC presented evidence that Claimant's disabled condition was not temporary and that DOC's employment structure did not permit a Correction Officer Trainee to take a permanent desk assignment. Claimant presented no contradictory evidence.

---

1. Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–38.

2. Chondromalacia refers to the softening of a person's cartilage.

3. The record does not indicate when Claimant began receiving benefits.

On January 8, 1998, the hearing examiner issued a proposed report and recommendation in which he concluded that Claimant's Heart and Lung benefits should be immediately terminated. The hearing examiner reasoned that Claimant's disability could no longer be considered temporary and that Claimant could not perform the duties regularly assigned to Correction Officers. On September 20, 1998, the Secretary adopted the findings and conclusions of the hearing examiner, and this appeal followed.

On appeal to this Court,[4] Claimant argues that the conclusions adopted by the Secretary were not supported by substantial evidence. Specifically, Claimant argues that he is capable of performing sedentary work and, therefore, is not permanently disabled.

Section 1(a) of the Act provides that the Commonwealth must compensate specifically identified public safety employees at their full rate of salary when injuries incurred in the performance of their duties leave them "**temporarily** incapacitated from performing [their] duties." 53 P.S. § 637 (emphasis added). In interpreting this section, we have noted that the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(b), requires us to strictly construe the terms of the Heart and Lung Act. *Colyer v. Pennsylvania State Police*, 165 Pa.Cmwlth. 41, 644 A.2d 230 (1994).

In *Cunningham v. Commonwealth of Pennsylvania, Pennsylvania State Police*, 510 Pa. 74, 507 A.2d 40 (1986), the Supreme Court of Pennsylvania held that, in a Heart and Lung benefits case, the Commonwealth bears the burden to prove that a claimant's disability is not temporary. To satisfy this burden, the Commonwealth must produce substantial evidence to establish a reasonable inference that the claimant's disability is "lasting or indefinite."[5] To determine whether the evidence creates a reasonable inference that a disability is lasting or indefinite, two elements must be considered. First, the court must consider the duration of the claimant's disability and the medical prognosis for future recovery. Second, the court must consider "whether the disability is of a nature which prevents the individual from performing the type of services normally required in his ... occupation." *Id.* at 86, 507 A.2d at 47.

In *Cunningham*, the claimant suffered a back injury which, even after surgery and physical therapy, left him forty to fifty percent disabled. The injury prevented Cunningham from ever resuming the full range of duties he performed as a police officer prior to his injury, although he was physically able to take a sedentary assignment. The Supreme Court found that a duration of 595 days of incapacitation, coupled with an unfavorable prognosis and evidence of permanent partial disability, created a reasonable inference that Cunningham was permanently disabled.

Furthermore, the *Cunningham* Court stated that:

[t]he Act contemplates that the injured employee will recover to the extent that he or she can be of functional value in his or her oftentimes hazardous occupation. It is thus in the interest of public safety to hold under this Act that the injured employee who will never be able to substantially perform the job be deemed permanently disabled.

---

4. This Court's standard of review from a final order of a Commonwealth agency is limited to determining whether the agency committed an error of law, violated a Claimant's constitutional rights, or made findings of fact which are not supported by substantial evidence. *Brandt v. Pennsylvania State Police*, 159 Pa. Cmwlth. 66, 632 A.2d 986 (1993), *petition for allowance of appeal denied*, 537 Pa. 668, 644 A.2d 1204 (1994).

5. "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Cunningham*, 510 Pa. at 85, 507 A.2d at 46, n. 12 (1986). A reasonable inference is reached by logical deduction from proven facts. It need not, however, be the only logical conclusion. *Id.* at 83–84, 507 A.2d at 45 (1986).

*Id.* at 87, 507 A.2d at 47. The Court amplified this statement by noting that:

it is not enough to demonstrate that appellee may be capable of exercising some of the non-physical responsibilities of the position. To the contrary, appellee must demonstrate that he or she can adequately assume those responsibilities expected of a state policeman.

*Id.* at 87, n. 14, 507 A.2d at 47, n. 14. Since Cunningham could not resume the physical responsibilities he previously performed as a state policeman, the Supreme Court concluded that he was permanently disabled and, therefore, ineligible for Heart and Lung benefits.

Conversely, in *Brandt v. Pennsylvania State Police*, 159 Pa.Cmwlth. 66, 632 A.2d 986 (1993), this Court reversed an order of the Commissioner of State Police denying a claimant Heart and Lung benefits. In 1990, Brandt had surgery to extract residual pellets from a gunshot wound he suffered in 1975. He applied for Heart and Lung benefits for the 20 day period of his recovery from the surgery. The surgery left Brandt permanently unable to perform duties which would require him to subdue suspects. However, he was able to resume his assignment in the Identification Division of the State Police where he had been an Identification Officer since 1977. In that capacity, his duties included collecting and processing evidence from crime scenes. Since Brandt could still perform the duties that he had performed prior to his application for Heart and Lung benefits, *i.e.*, the duties of an Identification Officer, we concluded that although Brandt was permanently injured he was not permanently disabled.

In reaching this conclusion, we noted that *Cunningham* did not stand for the proposition that an individual must be able to perform every possible function of his former position. Rather, an individual must be able to "substantially perform" the duties of his former position. *Brandt*, 632 A.2d at 988. Because Brandt could resume his full duties in the Identification Division without any serious expectation that he might need to subdue a suspect, we concluded that he remained able to substantially perform the duties of a police officer and that his disability was temporary.

The common principle underlying both *Cunningham* and *Brandt* is that, to be eligible for Heart and Lung benefits, a claimant must eventually recover from his disability to the degree that he can substantially perform the range of sedentary and physical duties he performed prior to his injury. In *Cunningham*, the Supreme Court refused to deem the claimant's disability temporary because he could never again resume the physical duties he had previously performed as a State Police Officer. Although Brandt was also a State Police Officer, this Court concluded that his disability was temporary because he was able to resume the full range of duties he previously performed as an Identification Officer.

In the present case, we conclude that Claimant is permanently disabled from substantially performing the duties he performed as a Correction Officer Trainee. Claimant, in fact, remains unable to perform *any* of his former duties, which involved tasks like escorting inmates, patrolling cell blocks or the exercise yard, or working in the guard tower.

In response, Claimant does not contest the physical nature of a Trainee's duties or that he is unable to resume those duties. Rather, Claimant argues that his disability should be deemed temporary, even though he will never be able to perform the duties of a Correction Officer Trainee, since he is able to perform sedentary work that DOC sometimes assigns to superior Correction Officers. He cites *Brandt* to support this argument.

However, Claimant overlooks a crucial distinction. Brandt was a veteran State Police Officer before his injury and, upon recovery, he resumed the full range of duties he had performed for the previous

13 years as an Investigation Officer. The present claimant, however, was a Correction Officer Trainee before suffering his injury, rather than a veteran Correction Officer. As a Trainee, Claimant never performed sedentary duties.

In addition, DOC presented testimony that its internal employment structure precludes offering desk jobs to Trainees. Under the DOC structure, a Correction Officer Trainee must complete a one-year training program during which Trainees rotate to various security posts within the correctional institutions. These posts involve tasks like escorting inmates, patrolling a cell block or the exercise yard, and working in the guard tower. Every Trainee post requires physical work and no post involves sedentary duties. After completing the year-long program, Trainees become eligible for the position called "Correction Officer One" which also involves mainly physical work. From Correction Officer One, officers graduate through a predictable hierarchy or ranks. Under this hierarchy, only superior officers regularly perform sedentary duties.

Based on the evidence presented, it is clear that the terms "Correction Officer Trainee" and "Correction Officer" describe distinct jobs. Since Claimant will never complete his year of training, he will never become eligible for the position of Correction Officer One, or any other superior position which might entail exclusively sedentary assignments.[6] Therefore, we find that Claimant's disability is of a nature which prevents him from performing the type of services normally required in his former occupation as a Correction Officer Trainee.

Accordingly, we conclude that DOC has satisfied the burden established by the

Supreme Court in *Cunningham* to prove that Claimant's disability is not temporary. First, DOC produced substantial evidence that Claimant's current incapacitation is lasting and indefinite. Second, DOC produced substantial evidence that Claimant's disability prevents him from performing non-sedentary duties normally performed by a Correction Officer Trainee. Taken together, this evidence creates a reasonable inference that Claimant's disability is lasting and permanent, and thus, Claimant is ineligible to receive continued benefits under the Heart and Lung Act.

Order affirmed.

### ORDER

**NOW,** July 29, 1999, the order of the Secretary of the Department of Corrections in the above-captioned matter is hereby affirmed.

---

**6.** Moreover, we construe Claimant's argument to assert that, under the Act, DOC had a duty to provide him with an alternative sedentary job. Claimant again directs our attention to *Brandt* in support of this assertion. However, we would note that *Brandt* is distinguishable from the present case in that Brandt resumed the same duties he performed prior to his incapacitation, whereas Claimant would have DOC create an entirely new position for him. Claimant provides no other authority establishing an affirmative duty of a Commonwealth agency to provide a claimant with a light-duty job under the Act, and our research has likewise revealed no such authority.