**Brian BENGINIA, Petitioner,**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF SCRANTON), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 12, 2002.

Decided Aug. 26, 2002.

---

William E. Wyatt, Jr. and Christopher B. Jones, Scranton, for petitioner.

Matthew D. Dempsey, Scranton, for respondent.

BEFORE: FRIEDMAN, Judge, and LEADBETTER, Judge, and MIRARCHI, Senior Judge.

OPINION BY Judge FRIEDMAN.

Brian Benginia (Claimant) petitions for review of the March 13, 2002, order of the Workers' Compensation Appeal Board (WCAB), which affirmed the decision of the workers' compensation judge (WCJ) to deny and dismiss Claimant's claim petition. We affirm.

On May 27, 1999, Claimant filed a claim petition alleging that he sustained a work-related acute myocardial infarction on March 27, 1999, while working as a fire-fighter for the City of Scranton (Employer). (WCJ's Findings of Fact, No. 1.) Employer filed a timely answer denying the allegations in the claim petition, and hearings were held before a WCJ.

At a February 8, 2000, hearing, Claimant testified on his own behalf. Claimant stated that he is employed with Employer as a chauffeur and that his job duties involve driving the engines and working the pumping handle, as well as going into and fighting fires. (WCJ's Findings of Fact, No. 4.) Claimant testified that, on March 27, 1999, while fighting a brush fire, he began to sweat and experience chest pain.[1] (WCJ's Findings of Fact, No. 4.) He further testified that these symptoms

---

1. Claimant stated that he was thirty-eight years old at the time. (R.R. at 33a.)

subsided, although he experienced pain when he woke up the next morning. (WCJ's Findings of Fact, No. 4.) The pain continued for the next four days until he went to the emergency room.[2] (WCJ's Findings of Fact, No. 4; R.R. at 27a–28a.)

As to his medical history, Claimant testified that he had no discomfort in his chest prior to March 27, 1999. (WCJ's Findings of Fact, No. 4; R.R. at 28a, 35a.) Claimant admitted that he has smoked two packs of cigarettes per day for approximately the past fifteen years. (WCJ's Findings of Fact, No. 5.) Claimant also admitted that, prior to March of 1999, his family physician had been treating him for hypertension. (WCJ's Findings of Fact, No. 5.) Claimant acknowledged that both of his parents have heart disease, and both have had open heart surgery; in addition, his grandmother died of a myocardial infarction. (WCJ's Findings of Fact, No. 5; R.R. at 40a–41a.) Since his hospital admission in March, Claimant has been treated at the hospital for angina. (WCJ's Findings of Fact, No. 5.) Claimant testified that he has not been back to work since March 27, 1999, (R.R. at 35a), and he is currently receiving heart and lung benefits equal to his full salary.[3] (WCJ's Findings of Fact, No. 4).

Claimant also presented the deposition testimony of Jay A. Shechter, M.D., Claimant's treating cardiologist. Dr. Shechter testified that he first treated Claimant on March 31, 1999, at the Mercy Hospital emergency room. (WCJ's Findings of Fact, No. 7.) Dr. Shechter stated that, initially, he did not believe Claimant was having a heart attack because his EKG was normal. (WCJ's Findings of Fact,

No. 7.) However, when Claimant's chest pain worsened later that evening, Dr. Shechter's associate performed a cardiac catheterization, which showed calcified coronary arteries with ninety per cent stenosis; the associate's attempted angioplasty on Claimant was unsuccessful. (WCJ's Findings of Fact, No. 7.) Dr. Shechter testified that Claimant has an abnormal amount of calcium in his coronaries and that, to prevent progression of coronary disease, one tries to modify lifestyle and reduce the number of risk factors. (WCJ's Findings of Fact, No. 7; R.R. at 76a.)

As to the relationship between Claimant's work environment and his heart condition, Dr. Shechter testified as follows:

Q: [An April 13, 1999, letter from Paul A. Cognetti, M.D., Claimant's treating family physician] does state that the cause for [Claimant's] condition does appear to be work related, stress, exertion, activity, and smoke exposure. Do you believe that they also would be factors that could be contributing factors to this condition?

A: Amongst others, yes, they could be. (R.R. at 81a.)

. . .

Q: Doctor, within a reasonable degree of medical certainty, can you give me an opinion as to whether you believe the work environment could have been a cause and contributing factor to [Claimant's] current heart condition?

A: Well, as I explained, causation is a difficult question. He certainly does have multiple risk factors. However, there is some evidence to suggest that it may have contributed.

---

2. Claimant testified that he first went to the emergency room on the evening of March 30, 1999; however, because it was after midnight when the paperwork was completed, the hospital records indicate the date as March 31. (R.R. at 29a.)

3. Claimant testified that, although Employer initially denied Claimant's application for heart and lung benefits, he began receiving these benefits with the paycheck immediately following the March 27, 1999 incident. (R.R. at 38a–39a, 47a–48a.)

(R.R. at 81a, 84a–85a.) Additionally, Dr. Shechter stated, "I know here everybody's looking for a cause. It's very complicated.... From a medical perspective, we don't—cause is a very difficult thing ... to put your finger on. There are contributory factors." (R.R. at 95a 96a.) Dr. Shechter also stated that it would be "unfair" for Claimant to return to his position with Employer. (R.R. at 83a.)

Claimant also offered the deposition testimony of Dr. Cognetti, who diagnosed Claimant with coronary artery disease, which Dr. Cognetti opined was caused by work-related stress, exertion, activity and smoke exposure. (WCJ's Findings of Fact, No. 10.) As a result of this condition, Dr. Cognetti placed Claimant out of work indefinitely. (WCJ's Findings of Fact, No. 10.) On cross-examination, Dr. Cognetti admitted that Claimant had complained of chest pains and a "skippy" heart beat in 1995; Dr. Cognetti also testified that he diagnosed Claimant with hypertension prior to March 27, 1999.[4] (WCJ's Findings of Fact, No. 11.)

In defense of the claim petition, Employer presented the deposition testimony of Sander J. Levinson, M.D., who is board-certified in internal medicine and in the subspecialty of pulmonary diseases. (WCJ's Findings of Fact, No. 12.) Dr. Levinson examined Claimant on September 28, 1999, at Employer's request, and also reviewed Claimant's medical records.[5] Dr. Levinson testified that his physical examination of Claimant revealed a regular heart rate; that an electrocardiogram revealed a normal sinus rhythm; and that Claimant had normal chest x-rays and excellent pulmonary function studies. (WCJ's Findings of Fact, No. 15.) Referencing the medical records, Dr. Levinson further testified that Claimant had a history of hypertension prior to March of 1999, elevated cholesterol, and a significant smoking history, as well as a significant family history of his father having coronary artery disease and open heart surgery with a coronary bypass and his mother also having open heart surgery with a heart condition. (WCJ's Findings of Fact, No. 14.)

Dr. Levinson also stated that Claimant's March 31, 1999, diagnosis of myocardial infarction had been made solely on the basis of elevated cardiac enzymes but that, in fact, Claimant did not have electrical evidence or electro cardiographic evidence of a myocardial infarction. (WCJ's Findings of Fact, No. 15.) Dr. Levinson noted that the initial cardiac enzyme study done upon Claimant's admission to the hospital was normal, but that a repeat enzyme study done at 9:30 a.m. was positive. (WCJ's Findings of Fact, No. 15.) Dr. Levinson explained that a person having a myocardial infarction will have a rise of cardiac enzymes in the initial twenty-four hours, indicating that, if Claimant had a myocardial infarction, it would have occurred within the twenty-four hours prior to the March 31, 1999, study and not on March 27, 1999. (WCJ's Findings of Fact, No. 15.)

Dr. Levinson also testified that Claimant's cardiac catheterization revealed that Claimant had pre-existing cardiac disease, with a ninety per cent obstruction, which takes years to develop. (WCJ's Findings

---

4. Claimant also presented the testimony of Captain Paul Triano, who was at the fire scene on March 27, 1999. (WCJ's Findings of Fact, No. 6.) Captain Triano testified that Claimant informed him of severe chest pain and that Claimant was sweating profusely. (WCJ's Findings of Fact, No. 6.)

5. The records were from: Dr. Cognetti; the Scranton Cardiovascular Group, including Dr. Shechter's reports; and Mercy Hospital, including inpatient admissions and outpatient studies, consisting of cardiac catheterization and cardiovascular stress testing. (WCJ's Findings of Fact, No. 12; R.R. at 154a–55a.)

of Fact, No. 16.) Additionally, Claimant had a pre-existing condition of heavily calcified vessels, which takes years to develop and occurs because of the deposition of cholesterol plaque. (WCJ's Findings of Fact, No. 16.)

Dr. Levinson opined that Claimant's work activities on March 27, 1999, had nothing to do with Claimant's myocardial infarction. (WCJ's Findings of Fact, No. 16.) Dr. Levinson reasoned that Claimant's cardiac catheterization indicated a well-established cardiac defect and that Claimant's heavily calcified vessels gave him an inherent anatomical problem with his heart, so that Claimant was destined to have a myocardial infarction. (WCJ's Findings of Fact, No. 16.) Dr. Levinson then opined that there was nothing in terms of Claimant's work that would have caused any acceleration or exacerbation of Claimant's underlying condition and that, if Claimant were doing work that would have caused the myocardial infarction or substantially contributed to it, that would have been evident before March 31, 1999. (WCJ's Findings of Fact, No. 16.)

The WCJ found Dr. Levinson's testimony to be more credible and convincing than the other relevant evidence. (WCJ's Findings of Fact, No. 17.) The WCJ explained that Dr. Levinson's opinion regarding the cause of Claimant's heart attack was the most definite and logically explained. (WCJ's Findings of Fact, No. 17.) The WCJ stated that Dr. Shechter was unable to state an exact cause of Claimant's myocardial infarction, noting that, although Dr. Shechter testified that Claimant's work could have been a factor, Dr. Shechter did not state his opinion with sufficient certainty to convince the WCJ that Claimant's work was a substantial factor contributing to Claimant's heart attack. (WCJ's Findings of Fact, No. 17.) The WCJ further found that Dr. Cognetti's opinion that Claimant's condition was caused by work-related stress, exertion, activity and smoke exposure was not supported by his own treatment records or by the hospital records. (WCJ's Findings of Fact, No. 17.) Further, because Dr. Cognetti's records contradicted Claimant's testimony that he did not have chest pain before March of 1999, the WCJ rejected Claimant's testimony regarding the cause of his condition. (WCJ's Findings of Fact, No. 17.) Accordingly, the WCJ found that Claimant failed to meet his burden of proving that his myocardial infarction was caused by his work, that his underlying coronary artery disease was aggravated by his work resulting in his myocardial infarction or that his work was a substantial contributing factor to the occurrence of his myocardial infarction. (WCJ's Conclusions of Law, No. 2.) Therefore, the WCJ denied and dismissed Claimant's claim petition. Claimant appealed to the WCAB, which affirmed. Claimant now petitions this court for review of the WCAB's order.[6]

Claimant first argues that Employer is collaterally estopped from denying the work-related nature of his injury because Employer has conceded this causal relationship by paying him heart and lung benefits.[7] Claimant reasons that, because the Workers' Compensation Act[8] permits recovery for injuries arising in the course of employment and related thereto, and

6. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

7. Claimant refers to a pension benefit record hearing held on December 13, 2000. However, this document is dehors the record, and, therefore, we will not consider it.

8. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

the Heart and Lung Act[9] limits recovery to those injuries that occur in the performance of one's duties, the Heart and Lung Act has a more narrow scope than the Workers' Compensation Act. Therefore, Claimant argues that, because his injury satisfies the requirements of the Heart and Lung Act, logically, he should be entitled to benefits under the Workers' Compensation Act. We disagree.

■ The doctrine of collateral estoppel, or issue preclusion, prevents the relitigation of issues of law or fact in a subsequent action when the following factors are demonstrated:

(1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party in the prior case and had a full and fair opportunity to litigate the issue and; (4) the determination in the prior proceeding was essential to the final judgment.

C.D.G., Inc. v. Workers' Compensation Appeal Board (McAllister), 702 A.2d 873, 875 (Pa.Cmwlth.1997) (footnote omitted).

■ Initially, we point out that neither the second nor the fourth factors have been demonstrated here because there never was any adjudication of Claimant's entitlement to benefits under the Heart and Lung Act. Thus, no final judgment was rendered establishing that Claimant's injury occurred during the performance of his duties with Employer. Nevertheless,

Claimant argues that, by paying heart and lung benefits, Employer has conceded that Claimant's injury was work-related for purposes of both the Heart and Lung Act and the Workers' Compensation Act. We cannot accept this argument.

■ Under the Heart and Lung Act, a heart attack, or myocardial infarction, is *legally presumed* to be work-related if the covered employee has worked for four consecutive years in his or her position. *Buchanan v. Pennsylvania State Police*, 152 Pa.Cmwlth. 608, 620 A.2d 575 (1993); *see* 53 P.S. § 637(b). On the other hand, in a claim petition proceeding under the Workers' Compensation Act, the claimant always carries the burden of proving that his or her injury is work-related. *Chik–Fil–A v. Workers' Compensation Appeal Board (Mollick)*, 792 A.2d 678 (Pa.Cmwlth.2002). Therefore, contrary to Claimant's assertion, Employer's payment of heart and lung benefits cannot be construed as an admission of liability in the claim petition proceeding; rather, Employer's payment of heart and lung benefits can be construed as nothing more than the mere acknowledgment of the legal presumption under the Heart and Lung Act. Because the Workers' Compensation Act does not afford Claimant the benefit of the same legal presumption, Claimant had to *prove* this element of his case to establish his entitlement to benefits under the claim petition. Where the WCJ rejected Claimant's evidence on the issue, Claimant simply failed to satisfy this burden.[10]

---

**9.** Act of June 28, 1935, *as amended,* 53 P.S. § 637–38.

**10.** We note that Claimant's reliance on *Kohut v. Workmen's Compensation Appeal Board (Township of Forward),* 153 Pa.Cmwlth. 382, 621 A.2d 1101, *appeal denied,* 535 Pa. 650, 633 A.2d 154 (1993), is misplaced. In *Kohut,* the claimant was receiving workers' compensation benefits and heart and lung benefits. We did not allow the employer to argue that

the claimant had a permanent injury for purposes of the Heart and Lung Act, while, at the same time, arguing that the claimant was not permanently disabled for purposes of the Workers' Compensation Act. However, this holding merely prevents the employer from arguing contrary positions for the same time period in order to satisfy different legal standards. *City of Pittsburgh v. Workers' Compensation Appeal Board (McGrew),* 785 A.2d 170 (Pa.Cmwlth.2001).

Next, Claimant argues that the WCJ's findings of fact and conclusions of law are not supported by substantial and competent evidence in light of inconsistencies in the findings of fact and conclusions of law. Specifically, Claimant points to Findings of Fact, No. 17 and contends that, contrary to the WCJ's finding, Dr. Shechter did testify with the requisite degree of medical certainty that Claimant's injury was caused by his work-related activities of March 27, 1999. Claimant contends that the WCJ reviewed Dr. Shechter's testimony out of context and did not consider his entire testimony. Claimant points out that Dr. Cognetti's opinion further supports a finding that Claimant's injury was caused by his March 27, 1999, work activities.

■ Here, the WCJ rejected Dr. Shechter's opinion because it "was not stated with sufficient certainty to be convincing...." (WCJ's Findings of Fact, No. 17.) Claimant's challenge to this finding is nothing more than an attack on the WCJ's determination regarding the weight to be accorded the evidence and the credibility of the witness. It is well settled that the WCJ is the sole arbiter of these matters, and such matters may not be reviewed on appeal. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa.Cmwlth.1995). Additionally, after reviewing Dr. Shechter's testimony as a whole, we note that, as a matter of law, it was insufficient to sustain Claimant's burden of proof.[11] *See Chicoine v. Workmen's Compensation Appeal Board (Transit Management Services)*, 159 Pa.Cmwlth.362, 633 A.2d 658 (1993) (holding that physician's testimony that the aggravation of the employee's

pneumonia from continuing to work as a truck driver was a contributing factor in leading to his demise, rather than a substantial contributing factor, was insufficient to sustain the widow's burden of proof in a fatal claim petition proceeding); *see also Lewis v. Commonwealth*, 508 Pa. 360, 498 A.2d 800 (1985) (holding that where the causal connection between an injury and the alleged cause is not obvious, the medical witness' testimony that the injury "might have come" or "possibly came" from the assigned cause is insufficient to sustain the claimant's burden of proof). Therefore, we will not disturb the WCJ's findings of fact and conclusions of law.

■ Finally, Claimant argues that the WCJ failed to issue a reasoned decision. We disagree.

Section 422(a) of the Workers' Compensation Act, 77 P.S. § 834, provides, in pertinent part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence....

---

11. Moreover, contrary to Claimant's argument, whether Dr. Cognetti's opinion supports Dr. Shechter's opinion is irrelevant because the WCJ rejected Dr. Cognetti's opinion.

As discussed, we disagree with Claimant that the WCJ failed to review Dr. Shechter's testimony as a whole and took words out of context. Additionally, the WCJ clearly explained the rationale for his findings and adequately explained why he rejected the testimony Dr. Shechter,[12] Dr. Cognetti[13] and Claimant[14] as to the cause of Claimant's condition. Therefore, the WCJ's decision complies with the reasoned decision requirements of section 422(a) of the Workers' Compensation Act.

Accordingly, for the foregoing reasons, we affirm.

### ORDER

AND NOW, this 26th day of August, 2002, the order of the Workers' Compensation Appeal Board, dated March 13, 2002, is hereby affirmed.

---

**12.** The WCJ explained that Dr. Shechter's opinion "was not stated with sufficient certainty to be convincing...." (WCJ's Findings of Fact, No. 17.)

**13.** The WCJ explained that Dr. Cognetti's own treatment records did not support his opinion. (WCJ's Findings of Fact, No. 17.)

**14.** The WCJ explained that Dr. Cognetti's records contradicted Claimant's testimony that he did not have chest pain before March of 1999, thus rendering Claimant's testimony regarding the cause of his condition unreliable. (WCJ's Findings of Fact, No. 17.)