**Richard A. GILOTTY, Appellant**

v.

**TOWNSHIP OF MOON.**

Commonwealth Court of Pennsylvania.

Argued Feb. 3, 2004.

Decided April 6, 2004.

---

Brian D. Cox, Pittsburgh, for appellant.

Lee R. Demosky, Greensburg, for appellee.

BEFORE: FRIEDMAN, Judge, LEADBETTER, Judge and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Richard A. Gilotty (Gilotty) appeals from the February 18, 2003, order of the Court of Common Pleas of Allegheny County (trial court), which denied Gilotty's appeal and affirmed the decision of the Board of Supervisors (Board) of the Township of Moon (Township) denying Gilotty's claim for benefits under the act commonly known as the Heart and Lung Act[1] on grounds that Gilotty did not have a temporary disability. We affirm.

Gilotty is employed as a police officer by the Township. (Board's Findings of Fact, No. 1.) On February 14, 1998, while performing his duties as a police officer, Gilotty was involved in a motor vehicle accident, and, as a result, he sustained neck and right shoulder injuries, which disabled

---

1. Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–638.

him from work. (R.R. at 220; *see* Board's Findings of Fact, No. 2.) Gilotty received benefits under the Heart and Lung Act until he returned to work as a police officer on March 22, 1999. On that date, he had to "requalify" with a handgun and shotgun; this required him to fire a minimum of fifty rounds with a handgun and fifteen rounds with a shotgun in less than twenty minutes. (R.R. at 233, 235, 260, 264.) After firing the shotgun, Gilotty experienced neck and shoulder discomfort, (R.R. at 235); nevertheless, Gilotty worked through March 27, 1999, but he has not returned to work since then. (Board's Findings of Fact, No. 2.)

Subsequently, Gilotty requested a hearing to determine his right to benefits under the Heart and Lung Act. Due process hearings were conducted on Gilotty's claim on October 19, 1999, and September 25, 2000.[2] (Board's Findings of Fact, No. 4.)

In support of his position, Gilotty testified on his own behalf. At the October 19, 1999, hearing, he described the incidents of February 14, 1998, and March 22, 1999, and his related medical treatment. Gilotty testified that his treating physician released him to return to work on March 22, 1999, pending approval of the company doctor and that he did, in fact, return to work on that date. (R.R. at 230, 261.) Gilotty stated that his duties as a police officer range from simple tasks such as taking reports to physical encounters with criminal persons. (R.R. at 215.) Gilotty testified that he feels he is incapable of performing these duties adequately, stat-

ing, "if I had to exercise physical control over that person, I would not only put myself in harm's way but anybody else that I was trying to protect." (R.R. at 250a.) Gilotty further testified that he could not handle firearms safely because he lacks grip control in his right hand, and he would not even attempt to discharge a shotgun placed on his right shoulder. (R.R. at 252–53.) Gilotty testified that he could drive a car occasionally, and he could complete paperwork, although not as quickly as in the past because he cannot stay in any position long enough to write or type. (R.R. at 250–51.)

At the September 25, 2000, hearing, Gilotty testified that William C. Welch, M.D., performed surgery on Gilotty's shoulder in February of 2000, (R.R. at 309), and Gilotty described his symptoms prior to and after the surgery. Gilotty testified that, as of the time of the hearing, he still could not perform his job as a police officer without limitation. (R.R. at 316.) According to Gilotty, he is not capable of handling physical altercations, (R.R. at 316), and he "would not even attempt" to discharge a shotgun mounted to his shoulder. (R.R. at 317.) Gilotty stated that he could perform paperwork, possibly unlock a car, perform mediation and take reports, although he stated that he would be limited in the length of time he could perform these tasks. (R.R. at 316.)

Gilotty also offered the April 28, 2000, deposition testimony of Dr. Welch, regarding the nature of Gilotty's injuries and treatment. Dr. Welch, who began treating

---

2. At the October 19, 1999, hearing, Gilotty's attorney stated that Gilotty has a combination of injuries from the February 14, 1998, and March 22, 1999, incidents and that Gilotty would present alternative claims. Gilotty based the first claim on the theory that his injury of February 14, 1998, recurred during his requalification on March 22, 1999, and the second claim on the alternative theory that the March 22, 1999, requalification incident aggravated Gilotty's pre-existing condition from the February 14, 1998, injury, causing a new injury which has resulted in disability. (R.R. at 217–18.) Gilotty would not stipulate that he ever fully recovered from the February 14, 1998, injury. (R.R. at 218.)

Gilotty on September 1, 1999, testified that the March 22, 1999, incident made Gilotty's injuries from the February 14, 1998, accident worse. (R.R. at 114, 126.) Dr. Welch opined that Gilotty's prognosis was fair, explaining that Gilotty has "not really made much of an improvement, although he's made some improvement." (R.R. at 115.) According to Dr. Welch, Gilotty could perform moderate-duty work. (R.R. at 114, 142.) Dr. Welch explained that, although Gilotty can do many activities required of a police officer, Gilotty should not physically wrestle with or restrain anyone. (R.R. at 115.) On cross examination, Dr. Welch admitted that: he was not sure he would allow Gilotty to requalify with a shotgun; he would not recommend that Gilotty subdue, in handcuffs, someone who was inebriated or hostile; and he believed that Gilotty's injury could affect his ability to intricately maneuver a vehicle at a high rate of speed. (R.R. at 137, 145, 146.) Dr. Welch stated that Gilotty possibly could perform these duties within six months, but he admitted it also was possible that Gilotty might not be able to resume these activities within that time frame and Gilotty might not ever be able to physically restrain a suspect. (R.R. at 146–47.)

For its part, the Township offered documentary and testimonial evidence, including the testimony of Chief of Police H. Thomas Krance (Krance). (Board's Findings of Fact, No. 7.) Krance testified that the Township police department does not have any light duty positions, so any restrictions would preclude an officer from working. (R.R. at 348.)

After reviewing the record, the Township's Board concluded that Gilotty sustained a work injury; however, the Board denied Gilotty's claim under the Heart and Lung Act on grounds that Gilotty's disability was not temporary. In explaining its decision, the Board stated,

> The decision is based upon the fact that no evidence was presented by the parties regarding the expected duration of Mr. Gilotty's disability. This claim concerns a work injury that occurred on February 14, 1998, which was exacerbated by the sustainment of a new work injury. Mr. Gilotty's own physician, Dr. Welch, has stated that Mr. Gilotty is not fully recovered from the 1998 injury. Given the period of time that has elapsed, coupled with the lack of favorable prognosis, it is reasonable to assume that Mr. Gilotty's disability is of a long-lasting or indefinite duration. Moreover, Mr. Gilotty does not dispute that his disability prevents him from performing the type of services normally required of his occupation as a Township police officer.

(Board's decision at 2.) Gilotty appealed to the trial court, which affirmed. Gilotty now appeals to this court.[3]

■ The Heart and Lung Act provides, in pertinent part:

> any policeman ... of any ... township, who is injured in the performance of his duties ... and by reason thereof is temporarily incapacitated from performing his duties, shall be paid ... his full rate of salary ... until the disability arising therefrom has ceased.

53 P.S. § 637(a). Our supreme court has held that the Heart and Lung Act is intended to cover only those disabilities where the injured employee is expected to

---

**3.** Where, as here, a complete record is developed before the local agency, our scope of review is limited to determining whether constitutional rights were violated, whether there was an error of law or violation of agency procedure and whether necessary findings of fact are supported by substantial evidence. *See Fetter v. Jersey Shore Area School District,* 833 A.2d 332 (Pa.Cmwlth.2003); *see also* 2 Pa.C.S. § 754.

recover and return to his or her position in the foreseeable future. *Cunningham v. Pennsylvania State Police*, 510 Pa. 74, 507 A.2d 40 (1986). "Where a disability is of indeterminate duration and recovery is not projected in the foreseeable future, it cannot be deemed "temporary" within the meaning of the [Heart and Lung] Act." *Id.* at 81, 507 A.2d at 44.

Gilotty first argues that the Board erred in placing the burden of proof on him to establish that his injury was not "permanent." However, we note that the Board's decision does not expressly allocate the burden of proof to either party; instead, it states, "[t]he decision is based upon the fact that no evidence was *presented by the parties* regarding the expected duration of Mr. Gilotty's disability." (Board's op. at 2) (emphasis added). The Board's failure to identify the burdened party is not fatal to the Board's decision where, as here, the evidence, including Gilotty's own testimony, supports the Board's conclusion that Gilotty's disability is not temporary.

■ In determining whether an employee's disability is not temporary, there must be substantial evidence to establish a reasonable inference that the employee's disability is "of lasting or indefinite duration." [4] *Cunningham*, 510 Pa. at 83, 507 A.2d at 45; *see also Hollenbush v. Department of Corrections, State Corrections Institute at Frackville*, 736 A.2d 48 (Pa. Cmwlth.1999).

To determine whether the evidence creates a reasonable inference that a disability is lasting or indefinite, two elements must be considered. First, the court must consider the duration of the claimant's disability and the medical prognosis for future recovery. Second, the court must consider "whether the disability is of a nature which prevents the individual from performing the type of services normally required in his ... occupation."

*Hollenbush*, 736 A.2d at 50 (quoting *Cunningham*, 510 Pa. at 86, 507 A.2d at 47)).

■ Here, Dr. Welch testified that Gilotty was not fully recovered from his injuries and that Gilotty's prognosis was fair. Dr. Welch limited Gilotty to moderate duty work, stating that Gilotty could not physically restrain suspects at the present time and admitting that Gilotty may never be able to do so. (R.R. at 142, 146–47.) Additionally, Gilotty testified that he could not physically control a person, he could not safely handle a firearm because he lacks grip control in his right hand, and he would not even attempt to discharge a shotgun. Moreover, Gilotty admitted that he could not complete even light duty desk work in a timely fashion because he could not stay in any position for long periods. Given this evidence, it was reasonable for the Board to infer that Gilotty's disability is of lasting or indefinite duration and, hence, not temporary. *See Cunningham.* Thus, the Board properly denied Gilotty benefits under the Heart and Lung Act. Consequently, we reject Gilotty's remaining two arguments, which are based on the erroneous presumption that he was receiving, or entitled to receive, benefits under the Heart and Lung Act.

■ Specifically, Gilotty relies on *Gwinn v. Pennsylvania State Police*, 668 A.2d 611 (Pa.Cmwlth.1995), *appeal denied,*

---

4. "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Cunningham*, 510 Pa. at 85, 507 A.2d at 46, n. 12. A reasonable inference is reached by logical deduction from proven facts. *Hollenbush v. De-*

*partment of Corrections, State Corrections Institute at Frackville*, 736 A.2d 48 (Pa.Cmwlth. 1999). The inference to be drawn is for the fact-finder, *Cunningham,* and it need not be the only logical conclusion, *Hollenbush.*

544 Pa. 686, 679 A.2d 231 (1996), for the proposition that a police officer *receiving Heart and Lung Act benefits* has a constitutionally protected property right in those benefits. He argues, therefore, that the Board could not "retroactively apply its decision that [Gilotty's] injuries were permanent to a date prior to the time of its decision and if such a finding of permanence were upheld it should only be effective as of the date of the decision and [Gilotty's] petition for benefits should be granted as to the new injury of March 22, 1999 . . . ." (Gilotty's brief at 12.) In other words, Gilotty argues that the Board had to grant him benefits based on his injury of March 22, 1999, and he was entitled to receive benefits at least through April 26, 1999, the date of the Board's determination that Gilotty's disability was not temporary.

Additionally, Gilotty argues that the Board erred in "deny[ing] Gilotty benefits based upon [his] injuries becoming permanent, when there had never been an initial award of benefits." (Gilotty's brief

at 3.) Gilotty maintains that the "proper method for the Township to seek termination based upon permanence of [Gilotty's] injuries would have been to recognize his claim and thereafter file a petition to terminate those benefits." (Gilotty's brief at 12–13.)

Both of Gilotty's arguments overlook an important fact, namely that the Board did not terminate any benefits; rather, Gilotty requested a hearing, seeking to establish his entitlement to Heart and Lung Act benefits, and the Board determined that Gilotty was not entitled *to receive* such benefits in the first instance. Because Gilotty was not receiving benefits, he has no constitutionally protected property right, and there can be no retroactive taking without due process. *Compare Gwinn.* Similarly, because Gilotty was not receiving benefits, there was no need for the Township to file a petition to terminate any benefits.[5]

Accordingly, for the foregoing reasons, we affirm.[6]

---

5. Were we to accept Gilotty's argument, we would effectively draft into the Heart and Lung Act a legal presumption in favor of the employee, which the legislature has chosen not to include. *Compare* section 637(b) of the Heart and Lung Act, which provides that diseases of the heart and tuberculosis are legally presumed to be work-related if the covered employee has worked for four consecutive years in his or her position. 53 P.S. § 637(b); *Benginia v. Workers' Compensation Appeal Board (City of Scranton)*, 805 A.2d 1272 (Pa. Cmwlth.2002).

6. Gilotty has also asked this court to award him attorney's fees and costs pursuant section 3(a) and (f) of the Act of December 13, 1982, P.L. 1127, *as amended*, 71 P.S. § 2033(a) and (f) (Costs Act), which provides:

a) Except as otherwise provided or prohibited by law, a Commonwealth agency that initiates an adversary adjudication shall award to a prevailing party, other than the Commonwealth, fees and other expenses incurred by that party in connection with that

proceeding, unless the adjudicative officer finds that the position of the agency, as a party to the proceeding, was substantially justified or that special circumstances made an award unjust.

. . .

(f) In the event a party appeals the underlying decision of the adversary adjudication, the court having jurisdiction over appeals from that Commonwealth agency shall forward fees and expenses to a prevailing party, other than the Commonwealth, unless the court finds that during such adversary adjudication the position of the Commonwealth agency was substantially justified, or that special circumstances make an award unjust.

Because, *inter alia*, Gilotty is not the prevailing party, he may not recover fees and costs. Moreover, we note that Gilotty could not recover fees and costs because he did not follow the proper procedure for seeking such an award, as set forth in section 2033(b) of the Costs Act, 71 P.S. § 2033(b).

## ORDER

AND NOW, this 6th day of April, 2004, the order of the Court of Common Pleas of Allegheny County, dated February 18, 2003, is hereby affirmed.