**John C. CRESCI, Petitioner,**

v.

**PENNSYLVANIA STATE POLICE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 17, 2004.

Decided Dec. 6, 2004.

Ian J. Blynn, Harrisburg, for petitioner.

Daniel R.L. McGuire, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and FRIEDMAN, J., and JIULIANTE, Senior Judge.

OPINION BY Judge FRIEDMAN.

John C. Cresci (Cresci) petitions for review of the January 6, 2004, order of the Pennsylvania State Police (PSP) Commissioner: (1) terminating benefits Cresci received under the act commonly known as the Heart and Lung Act[1] for a work-related knee injury; and (2) denying Heart and Lung Act benefits to Cresci for his back injury. We affirm.

1. Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. § 637–638.

The Commissioner made the following findings of fact:

1. Trooper John Cresci has been a member of the [PSP] since 1993.

2. On June 21, 1994, Trooper Cresci injured his right knee during a traffic stop. As a result of that injury, he was temporarily disabled and received benefits under the Heart and Lung Act.

3. On July 21, 1994, Trooper Cresci had reconstructive knee surgery to repair his anterior cruciate ligament.

4. Following the period of disability for his knee injury and surgery, Trooper Cresci returned to work in full duty status.

5. In 1997, Trooper Cresci suffered a recurrence of the knee injury while he was responding to a building alarm.

6. As a result of the recurrence, Trooper Cresci underwent arthroscopy on his right knee and missed another period of work.

7. Following the second period of disability, Trooper Cresci returned to work on limited duty.

8. Trooper Cresci continued to experience pain in his right knee and went to see an orthopedic surgeon, James Bumgardner, M.D.

9. Dr. Bumgardner's evaluation revealed that Trooper Cresci's knee was loose, indicating that his anterior cruciate ligament graft had been injured.

10. On June 21, 2001, Dr. Bumgardner performed a second anterior cruciate ligament reconstruction.

11. As a result of the second knee surgery, Trooper Cresci again missed work and was awarded Heart and Lung Act benefits.

12. In October 2001, while on disability leave, Trooper Cresci was climbing the stairs at his home when he experienced pain in his injured knee.

13. In response to the pain, Trooper Cresci bent over, grabbed his knee, and experienced a "hot poking feeling" in his lower back. The back pain gradually increased over a few days with radiation of the pain into his buttocks.

14. Trooper Cresci reported the back pain to Dr. Bumgardner, who ordered an MRI scan, which showed a herniated disc at L4–5 on the right.

(Findings of Fact, Nos. 1–14) (citations omitted). Dr. Bumgardner subsequently referred Cresci to Ernest E. Cope, M.D., who performed back surgery on Cresci on January 9, 2003. (Findings of Fact, Nos. 19, 21.)

On May 29, 2002, L. Richard Tabulsi, M.D., performed an independent medical evaluation of Cresci. (Findings of Fact, No. 22.) Dr. Tabulsi opined that Cresci's knee injury had healed sufficiently for Cresci to return to full-time sedentary work but that Cresci's back injury prevented him from working more than six hours per day. (Findings of Fact, Nos. 23, 24.) By memorandum dated August 7, 2002, PSP ordered Cresci to return to work; however, Cresci failed to do so. (Findings of Fact, Nos. 25, 26.)

Subsequently, PSP sought to terminate Cresci's Heart and Lung Act benefits. Additionally, as a result of Cresci's failure to return to work, PSP filed a petition to modify workers' compensation benefits Cresci had been receiving. (Findings of Fact, Nos. 30, 32.) An arbitrator[2] held an

**2.** We note that, pursuant to PSP's administrative regulations (AR), a "neutral hearing examiner or arbitrator" may hear a case regarding termination of Heart and Lung Act benefits. (PSP AR 4–4(G)(1).) The hearing documents and proposed report indicate an arbitrator held the hearing, while the parties refer to a hearing examiner. Any distinction

administrative hearing in the Heart and Lung matter, and a workers' compensation judge (WCJ) held hearings in the workers' compensation matter. (R.R. at 95a, 231a, 237a.)

By decision and order dated April 30, 2003, the WCJ denied PSP's modification petition. (Findings of Fact, No. 33; R.R. at 236a.) In doing so, the WCJ determined that Cresci's back injury was causally related to his knee injury and that PSP failed to establish that Cresci was capable of performing the work available to him. (R.R. at 235a.)

■ On November 24, 2003, the arbitrator filed a proposed report with the PSP Commissioner regarding Cresci's Heart and Lung Act benefits; the arbitrator concluded that PSP was estopped from terminating Cresci's Heart and Lung Act benefits based on the WCJ's decision and order. (Findings of Fact, No. 34.) However, the PSP Commissioner disagreed, concluding that collateral estoppel would not bar the Heart and Lung Act proceedings because the issues in that proceeding are not identical to the issues in the prior workers' compensation proceeding.[3] The Commissioner then denied Cresci Heart and Lung Act benefits for his back injury, noting that Cresci never filed a claim for Heart and Lung Act benefits for his back injury, and, further, Cresci's back injury

did not occur in the performance of his duties and was not caused or aggravated by his knee injury. The Commissioner also determined that Cresci was sufficiently recovered from his knee injury to return to full-time sedentary duty and, accordingly, terminated Cresci's Heart and Lung Act benefits. Cresci now petitions this court for review of the Commissioner's order.[4]

■ Cresci first argues that the Commissioner erred in determining that collateral estoppel does not apply. According to Cresci, the issues in the workers' compensation proceeding and the Heart and Lung proceeding are the same: namely, whether Cresci's back injury is work-related, and, if so, whether it is disabling. We disagree that the proceedings involved identical issues.

Section 1(a) of the Heart and Lung Act provides, in pertinent part:

[a]ny member of the State Police Force ... who is injured in the *performance of his duties* ... and by reason thereof is temporarily incapacitated from performing his duties, shall be paid ... his full rate of salary ... until the *disability* arising therefrom has ceased.

53 P.S. § 637(a) (emphasis added). In comparison, section 301(c) of the Workers'

---

is not relevant here, and we will use those terms interchangeably as we paraphrase the parties' arguments.

3. Under the doctrine of collateral estoppel,

"[w]here a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action." The judgment in the prior action operates as estoppel in the second action, however, only as to those issues that (1) are identical (2) were actually litigated

(3) were essential to the judgment and (4) were material to the adjudication.

*Kohut v. Workmen's Compensation Appeal Board (Township of Forward)*, 153 Pa.Cmwlth. 382, 621 A.2d 1101, 1103 (1993) (citations omitted), *appeal denied*, 535 Pa. 650, 633 A.2d 154 (1993).

4. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

Compensation Act[5] provides benefits to employees who are disabled as a result of sustaining an injury "arising in the course of his [or her] employment and related thereto." 77 P.S. § 411(1). This court has held that the relevant language of section 1(a) of the Heart and Lung Act has a more narrow focus than the relevant language of section 301(c) of the Workers' Compensation Act[6] and, hence, that the standards for determining compensability under these two provisions are *not* the same. *Allen v. Pennsylvania State Police*, 678 A.2d 436 (Pa.Cmwlth.1996); *Colyer v. Pennsylvania State Police*, 165 Pa.Cmwlth. 41, 644 A.2d 230 (1994). Thus, whether Cresci is entitled to benefits under the Heart and Lung Act for his back injury presents a different issue than whether Cresci is entitled to workers' compensation benefits for that injury. Accordingly, the Commissioner correctly determined that collateral estoppel does not apply to preclude PSP from seeking to terminate Heart and Lung benefits.

■ Cresci next argues that when the Commissioner determined that collateral estoppel did not apply, he was required under the PSP Administrative Regulations to remand the matter to a neutral hearing examiner for a decision on the underlying merits. Cresci also argues that the Commissioner's decision on the merits is unsupported by the evidence, where Cresci's evidence establishes that his back injury is a direct result of his work-related knee injury and PSP's medical evidence was equivocal on the issue of causation. How-

ever, we need not consider these issues because we agree that as a matter of law, Cresci cannot recover Heart and Lung Act benefits for his back injury.

■ As stated, to receive benefits under section 1(a) of the Heart and Lung Act, one must be "injured in the performance of his duties ... and by reason thereof [be] temporarily incapacitated from performing his duties." 53 P.S. § 637(a). This language must be strictly construed. *Colyer*. "[T]he dispositive inquiry to determine if an officer was injured in the performance of his duties is whether the officer was engaging in an obligatory task, conduct, service, or function that arose from his or her position as a State Police officer as a result of which an injury occurred, irrespective of whether the officer was on duty at the time." *McLaughlin v. Pennsylvania State Police*, 742 A.2d 254, 257 (Pa.Cmwlth.1999).

Here, Cresci testified that he injured his back when he was climbing his stairs at home, and, in response to pain in his knee, he bent over to grab the knee. (Findings of Fact, Nos. 12, 13; R.R. at 128a.) Clearly, at the moment he injured his back while bending over at his home, Cresci was not engaged in an obligatory task, conduct, service or function that arose from his position with PSP. As such, Cresci was not injured in the "performance of his duties" as required by the Heart and Lung Act. Therefore, Cresci cannot, as a matter of law, receive Heart and Lung Act benefits for his back injury.[7]

---

**5.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).

**6.** Additionally, the language of the Heart and Lung Act must be strictly construed while the language of the Workers' Compensation Act must be liberally construed. *Colyer v. Pennsylvania State Police*, 165 Pa.Cmwlth. 41, 644 A.2d 230 (1994).

**7.** Additionally, we note that section 1(a) of the Heart and Lung Act does not grant a police officer the presumption that an injury occurred in the "performance of his duties." *See Gilotty v. Township of Moon*, 846 A.2d 195 (Pa.Cmwlth.2004) (comparing sections 1(a) and 1(b) of the Heart and Lung Act, 53 P.S. § 637(a) and 53 P.S. § 637(b), respectively, and refusing to draft a presumption in

Accordingly, for the foregoing reasons, we affirm.

*ORDER*

AND NOW, this 6th day of December, 2004, the order of the Pennsylvania State Police Commissioner, dated January 6, 2004, is hereby affirmed.

favor of the employee into 53 P.S. § 637(a) similar to that existing in 53 P.S. § 637(b)). Here, Cresci never sought to establish his entitlement to benefits under the Heart and Lung Act; rather, this matter arises from the PSP seeking to terminate Cresci's Heart and Lung Act benefits relative to his knee injury.